OPINION OF THE COURT
Hugh R. Elwyn, J.
Arial La Croix, the putative father of a child born out of wedlock on August 19,1973 to Debra Campbell Deyo, now deceased, brings this paternity proceeding to have himself declared to be the father of the child so that he may have standing to seek the child’s custody (Family Ct Act, § 511). Although the child is now seven years old the proceeding is still timely for a proceeding may be brought by a putative father at any time prior to the child’s 18th birthday (Family Ct Act, § 517, subd [c]).
Prior to January 1,1977, there was a conflict in authority as to whether or not a putative father could maintain a *383 paternity proceeding.[1] That conflict has been resolved with the enactment of chapter 665 of the Laws of 1976, effective January 1, 1977, which amended section 522 of the Family Court Act entitled, “Persons who may originate proceedings” by inserting the phrase, “by a person alleging to be the father, whether a minor or not”. There is thus no longer any question as to the father’s right to maintain this proceeding (Matter of Salvatore S. v Anthony S., 58 AD2d 867; Matter of James J. v Valerie M., 98 Misc 2d 785, 786; Matter of Commissioner of Social Servs. of City of N. Y. v Lazaro F., 99 Misc 2d 408; Matter of John J.S. v Theresa L., 99 Misc 2d 578, 581).
The mother of the child was killed in an auto accident on October 13, 1980. This proceeding was commenced on December 9, 1980 against the administrator of the mother’s estate. While the appointment of a legal representative of the mother’s estate may not have been strictly necessary,[2] the petitioner in this case has followed the better practice by naming as the respondent the administrator of the deceased mother’s estate (Matter of Henry v Rodd, 95 Misc 2d 996).
“If, after a petition is filed, the mother dies * * * the proceeding does not abate but may be continued by any of the persons authorized by this article to commence a paternity proceeding” (Family Ct Act, § 518).[3] The statute does not, however, cover the situation, as is the case here, where *384 the mother dies before the proceeding is commenced. May a putative father maintain a paternity proceeding when the mother dies prior to the commencement of the proceeding? In Matter of James J. v Valerie M. (supra), the only reported case dealing with the situation, the Family Court of New York County allowed a paternity proceeding brought by a putative father to proceed against a deceased mother even without the necessity for the appointment of an administrator of the mother’s estate.
Although neither parent’s obligation to support an out-of-wedlock child may be enforced against the deceased parent’s estate unless an order of support or a judicially approved settlement has been made prior to that parent’s death (Family Ct Act, § 513), in the light of the provisions of section 518 of the Family Court Act declaring that “[i]f, after a petition is filed, the mother dies *** the proceeding does not abate” there seems to be no logical reason, where an obligation to support is sought to be neither established nor enforced, why a putative father should not be permitted to maintain a proceeding against the legal representative of the deceased mother’s estate for the sole purpose of establishing his status. (Family Ct Act, §§ 522, 523; Matter of John J. S. v Theresa L., 99 Misc 2d 578, supra.) The child cannot be adversely affected for an adjudication of its father’s paternity is not a binding adjudication of illegitimacy. “It does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties” (Commissioner of Public Welfare of City of N. Y. v Koehler, 284 NY 260, 267; see, also, Matter of Salvatore S. v Anthony S., 58 AD2d 867, supra; contra Matter of Commissioner of Social Servs. of City of N. Y. v Lazaro F., 99 Misc 2d 408, 410, supra). If such an adjudication were to be made, the child would still be the legitimate child of his mother so that he and his issue may inherit from his mother and his maternal kindred (EPTL 4-1.2, subd [a], par [1]). Since 10 years have not yet elapsed since the child’s birth such an adjudication made within the father’s lifetime would also make him the legitimate child of his father so that he and his issue may inherit from *385 his father and his paternal kindred (EPTL 4-1.2, subd [a], par [2], cl [A]).
There may well be difficulties of proof inherent in this situation by reason of the mother’s death flowing from the provisions of CPLR 4519 (the “dead man’s statute”) (but see People ex rel. Blake v Charger, 76 Misc 2d 577, 578) and questions concerning the quantity and quality of proof, i.e., whether it must be “entirely satisfactory” as in any other paternity proceeding (Matter of James J. v Valerie M., 98 Misc 2d 785, 787, supra), or whether a lesser degree than that of “entirely satisfactory” might suffice and a finding of paternity, when sought by a father, made on only a preponderance of the evidence (Jaynes v Tulla, 70 AD2d 680). These questions may await the trial, for they do not go to the right of the putative father to maintain the proceeding.
The petitioner’s motion to dismiss defenses pursuant to CPLR 3211 for lack of merit. The respondent has filed an amended answer and a corrected amended answer wherein in addition to denying generally the allegations of the petition, except admitting that Debra Campbell Deyo is the natural mother of the child and that she died on October 13, 1980 and was never married to the petitioner, he raises seven affirmative defenses. The petitioner has moved pursuant to CPLR 3211 (subd [b]) for judgment dismissing the defenses contained in paragraphs numbered 6-19 of the answer on the ground that a defense is not stated or has no merit.
The motion is granted with respect to the first, second and fourth defenses and denied as to the third, fifth, sixth and seventh defenses.
The first defense alleges “that there is no order of any court of competent jurisdiction adjudging that the petitioner is the lawful father of the infant Paul”. Such a statement does not state a defense to a paternity petition since it simply restates the absence of the very relief the petitioner seeks.
The second affirmative defense (paragraphs 7-13) alleges, in substance, that at the time of the commencement *386 of their sexual relationship the mother of the child was only 13 years old, that at the time of the conception of the child sometime in November, 1972 she was only 15 years old and the petitioner was only 19 years old. Since at the time of the sexual intercourse which resulted in conception the female partner is deemed to have been incapable of consent, she being less than 17 years of age (Penal Law, § 130.05, subd 3) the petitioner, by his own verified statement, is guilty of sexual misconduct in violation of section 130.20 of the Penal Law, a class A misdemeanor. The petitioner’s claim to being the father of the child thus rests upon an illegal act and since no one should be allowed to found a claim on his own wrongful act the petitioner, it is alleged, should be estopped from claiming the fruits thereof. Although this position finds support in the decision of the Family Court of Onondaga County in Matter of Hines v Sullivan (105 Misc 2d 288), this court is of the opinion that the defense is without merit, for the reasons hereinafter stated under the heading of “Respondents motion to dismiss”. The defense is dismissed as without merit.
The fourth affirmative defense (paragraph 14) merely asserts that since the mother was but 14 years of age at the time the child was conceived, a question of statutory rape may be involved. The age of the participants in the acts of sexual intercourse which resulted in the conception of the child in November, 1972 — the female 15 years old and the male 17 years old do not fit the age bracket for the proscription of rape in the third degree (Penal Law, § 130.25, subd 2) or rape in the second degree (Penal Law, § 130.30). If anything, the petitioner’s acts constituted no more than sexual misconduct (Penal Law, § 130.20) which, for the same reasons applicable to the second defense, is without merit.
The third defense (paragraph 13) pleads abandonment of the child whom petitioner now seeks to be declared to be the father. The fifth defense (paragraphs 15 and 16) pleads facts which might preclude the granting of the visitation rights the petitioner seeks. The sixth (paragraphs 17 and 18) and the seventh (paragraph 19) defenses plead facts *387 which might justify a denial of the custody of the child which the petitioner also seeks.
The third, fifth, sixth and seventh defenses, while they do not constitute legal defenses to the principal issue — whether the petitioner is or is not the father of the child do plead facts which may be relevant to the issue of custody and visitation. Since the Family Court, when it makes a finding of paternity, has jurisdiction to make an order of custody or of visitation (Family Ct Act, § 511; Matter of Pierce v Yerkovich, 80 Misc 2d 613) and the petitioner seeks such relief as well as a declaration of paternity, the defenses raised have sufficient merit to withstand the petitioner’s motion to dismiss them.
The respondent’s motion pursuant to CPLR 3211 to dismiss petition founded upon commission of a crime. The respondent has also cross-moved pursuant to CPLR 3211 for judgment dismissing the paternity petition upon the ground that it is founded upon an illegal act to which the petitioner was a party inasmuch as the petitioner by his own verified statement acknowledges an act of sexual intercourse with a female person under 17 years of age who was incapable of giving her consent (Penal Law, § 130.05, subd 3), thereby committing the crime of sexual misconduct in violation of section 130.20 of the Penal Law. Sexual misconduct is a class A misdemeanor.
In support of the motion to dismiss the respondent relies upon the recent decision of the Family Court of Onondaga County in Matter of Hines v Sullivan (105 Misc 2d 288, supra), which is factually indistinguishable from this case. In Matter of Hines v Sullivan (supra), the putative father of a child born out of wedlock sought an order of filiation so that he might seek custody of the child. The respondent at the time of her sexual liaison with the petitioner was because of her age, incapable of giving her consent (Penal Law, § 130.05, subd 3). Since the petitioner’s cause of action was founded upon an illegal act, sexual misconduct in violation of section 130.20 of the Penal Law, to which he was a party, the court dismissed the petition, noting that it has long been a maxim of the common law that “[a] person cannot maintain a cause of action if, in order to establish it, *388 he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party” (1 CJS, Actions, § 13, p 996).
The court in Hines also quotes from the case of Riggs v Palmer (115 NY 506, 511-512), wherein the Court of Appeals said: “No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own inequity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes”.
An example of a recent expression of the same public policy may be found in chapter 18 of the Laws of 1979 which amended subdivision 1 of section 384-c of the Social Services Law to insert a sentence reading: “Persons specified in subdivision two of this section [enumerating those persons entitled to notice of the proceeding] shall not include any person who has been convicted of rape in the first degree involving forcible compulsion, under subdivision one of section 130.35 of the penal law, when the child who is the subject of the proceeding was conceived as a result of such rape”.
It is significant to note, however, that although the Family Court Advisory and Rules Committee (Family Ct Act, § 212, subd [b]), which supported this measure, also suggested that this proposal not be limited to rape by forcible compulsion, and should include convictions of other pertinent sex offenses as set forth in article. 130 of the Penal Law (Memorandum of Office of Court Administration, 1979 McKinney’s Session Laws, p 1870) the Legislature failed to adopt this suggestion. The amendment to subdivision 1 of section 384-c of the Social Services Law enacted by the Legislature excludes from the right to a notice of a proceeding affecting an out-of-wedlock child only the father of a child who has been convicted of the crime of rape in the first degree involving forcible compulsion under section 130.35 of the Penal Law and does not extend to the father of a child who may have been con *389 ceived as the result of any lesser degree of rape such as rape in the second degree (Penal Law, § 130.30) or rape in the third degree (Penal Law, § 130.25) or sexual misconduct (Penal Law, § 130.20). A father of an out-of-wedlock child conceived as the result of any of the latter three criminal acts ranging from a class D felony for rape in the second degree through a class E felony for rape in the third degree to a class A misdemeanor for sexual misconduct would still be entitled to notice of any proceeding initiated pursuant to sections 358-a, 384 and 384-b of the Social Services Law, involving a child born out of wedlock. This is the most recent expression of the public policy of this State as found in the legislative enactments and provides a clue to a resolution of the moral issue raised by the respondent’s motion to dismiss this paternity petition.
“Public policy of the State is evidenced by expression of the will of the Legislature contained in statutory enactments, and such policy is material in the exposition of legislative intent in other statutes in case of ambiguity” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 126).
The text of section 126 continues: “Public policy is necessarily variable and changes with changing conditions but is evidenced by expression of the will of the Legislature contained in statutory enactments, and the State’s public policy, as determined and recorded by the Legislature, may not be changed and rewritten by court to satisfy its own private notion of what such policy should be. Public policy of the State is what the Legislature says it is where the Legislature has spoken, and a policy so declared sometimes has to be followed by the courts in areas beyond the express reach of the statute for the sake of consistency in the administration of law”. (Citing Matter of Steinberg v Steinberg, 18 NY2d 492.)
The moral dilemma raised by this motion is most troublesome to this court. On the one hand, consideration of morality and abstract conceptions of right and wrong lead to the conviction that the case of Riggs v Palmer (115 NY 506, supra) should still stand as the law by this State. On the other hand, it is indeed questionable, whether in the light of recent holdings of our highest appellate courts that *390 the rule of Riggs v Palmer (supra) should be applied in all its vigor to the field of sexual morality.
In spite of misgivings as to the wisdom of the trend, this court feels compelled to take note of the metamorphosis through which the rights of a father of an out-of-wedlock child may be traced ranging from virtually none at all (People ex rel. Meredith v Meredith, 272 App Div 79, affd 297 NY 692; “Doe” v “Roe”, 37 AD2d 433; Matter of Cornell v Hartley, 54 Misc 2d 732) to their culmination in full recognition by the United States Supreme Court (Stanley v Illinois, 405 US 645; Caban v Mohammed, 441 US 380; see, also, “Doe” v. Department of Social Servs. of City of Poughkeepsie, 71 Misc 2d 666; Matter of Pierce v Yerkovich, 80 Misc 2d 613, supra; Matter of Anonymous, 97 Misc 2d 927; Status of Unwed Fathers in N. Y. State — Post Caban, 12 Family L Rev, No. 1, March, 1980, pp 2-8). Any legal distinction which may have formerly existed between the rights of the married and unmarried parent and between the legitimate and the illegitimate child have been all but obliterated.[4]
In the field of custody, “amorality, immorality, sexual deviation and what we conveniently consider aberrant sexual practices do not ipso facto constitute unfitness for custody” (Matter of Feldman v Feldman, 45 AD2d 320, 322). Nor does adultery, although a crime (Penal Law, § 255.17), brand a parent unfit to have the custody of a child (Matter of Saunders v Saunders, 60 AD2d 701; People ex rel. Selbert v Selbert, 60 AD2d 692).
There once was a time when it was held that a married woman could not maintain a paternity proceeding (see Matter of Kehn v Mainella, 40 Misc 2d 55, which had relied on Commissioner of Public Welfare of City of N. Y. v Koehler, 284 NY 260, supra, and People v Arcieri, 8 AD2d 923). This is no longer true and the majority opinion now holds that a married woman may maintain a paternity proceeding under article 5 of the Family Court Act (Matter *391 of Morris v “White”, 29 AD2d 905; Matter of Mannain v Lay, 33 AD2d 1024; Matter of Iris “GG” v Thomas “HH”, 37 AD2d 1006; Matter of Fitzsimmons v De Cicco, 44 Misc 2d 307; Matter of “Anonymous” v “Anonymous”, 43 Misc 2d 1050; Matter of Oliver v England, 48 Misc 2d 335, 337; Matter of Lee v Stix, 55 Misc 2d 940, 943; Matter of Burnes v Burnes, 60 Misc 2d 675, 676). This in spite of the fact that in order for a married woman to conceive a child born out of wedlock she must necessarily have committed an act of adultery which section 255.17 of the Penal Law declares to be a class B misdemeanor. The commission of the crime of adultery has never been held to bar a married woman from maintaining a paternity proceeding to obtain an order of filiation to have some man other than her husband declared to be the father of her out-of-wedlock child. Although there appear to be no reported cases on the point, logic dictates that the same result should obtain in the case of a mother seeking to establish the paternity of a child conceived as the result of a bigamous relationship, a class E felony (Penal Law, § 255.15) or an incestuous relationship, also a class E felony (Penal Law, § 255.25).
If the father of an illegitimate child has rights to that child which must be recognized by the courts (Stanley v Illinois, 405 US 645, supra; Matter of Pierce v Yerkovich, 80 Misc 2d 613, 614, supra); if the adoption of his out-of-wedlock child cannot be accomplished without his consent (Caban v Mohammed, 441 US 380, supra) and he is entitled to notice of legal proceedings affecting the child (Domestic Relations Law, § 111-a; Social Services Law, § 384-c); if a married woman is not barred by her adultery, a class B misdemeanor (Penal Law, § 255.17) from maintaining a paternity suit and presumably would not be barred from maintaining such a suit to establish the paternity of a child conceived as the result of either a bigamous or an incestuous relationship, both class E felonies (Penal Law, §§ 255.15, 255.25); and neither amorality, immorality or deviate sexual conduct, or adultery, a class B misdemeanor (Penal Law, § 255.17) automatically disqualifies a parent from seeking or retaining the custody of a minor child, why should sexual misconduct between children in which only *392 the male participant is guilty of a crime (Penal Law, § 130.20)[5] bar a putative father from maintaining a proceeding to establish his status to seek the custody of a child born of that relationship (Family Ct Act, § 511)? The Court of Appeals has recently declared, “[I]t is not the function of the Penal Law in our governmental policy to provide either a medium for the articulation or the apparatus for the intended enforcement of moral or theological values” (People v Onofre, 51 NY2d 476, 488, n 3; see, also, People v Whidden, 51 NY2d 457 [Meyer, J., dissenting]).
While the court recognizes the moral force of the rule enunciated by the Court of Appeals in Riggs v Palmer (115 NY 506, supra) and cited by the Family Court Judge as authority for his decision in Matter of Hines v Sullivan (105 Misc 2d 288, supra) and relied upon by the respondent herein, I am persuaded for the reasons herein expressed that a rule which has generally been applied to situations involving property rights or ill-begotten pecuniary gains[6] should not, in the light of the currently prevailing liberal sexual morality to which allusion has been made and the potential benefits to the child of an adjudication of his paternity (Matter of Linnie D.B. v Lonnie J.H., 65 Misc 2d 754; Matter of John J.S. v Theresa L., 99 Misc 2d 578, 581, supra; Matter of Antoinette K. v Kenneth L., 103 Misc 2d 1011, 1012-1013) as well as the enhanced rights of the putative father (see Matter of Commissioner of Social Servs. of City of N. Y. v Lazaro F., 99 Misc 2d 408, supra) be extended to the field of sexual morality even though such acts may be illegal (People v Onofre, 51 NY2d 476, supra).
In short, this court for the reasons here stated disagrees with the decision in Matter of Hines v Sullivan (supra) and since this court is not bound by a decision of another Judge of the same court declines to follow it. The respondent’s *393 motion to dismiss the petition because of the petitioner’s wrongful act is denied. The matter will be scheduled for trial on due notice.

. See Matter of Crane v Battle (62 Misc 2d 137); Matter of Alvin B. v Denise C. (85 Misc 2d 413) and Matter of J. (50 AD2d 890) which upheld a putative father’s right to maintain a paternity proceeding. Contra Matter of Roe v Roe (65 Misc 2d 335) which denied him that right. Cf. Matter of Juan R. v Necta V. (84 Misc 2d 580) which involved an unadjudicated putative father’s right to seek visitation rights.

. See Matter of James J. v Valerie M. (98 Misc 2d 785, supra) wherein an order of filiation was made at the behest of the putative father where all necessary parties were before the court and the children were represented by a Law Guardian. Also Matter of Gordon v Cole (54 Misc 2d 967) wherein an order of filiation was made against a deceased father who was the only named respondent and the petition was joined in by all members of the deceased’s family and there was no opposition.

. If the putative father dies no adjudication of paternity may be made, because an order of filiation must be made during the lifetime of the father (Matter of Middlebrooks v Hatcher, 55 Misc 2d 301, citing Family Ct Act, § 513, and EPTL 4-1.2, subd [a], par [2], See, also, Matter of Corbett v Corbett, 100 Misc 2d 270; Matter of Ellen C. v William C. 79 AD2d 1024). Cf. Matter of Henry v Rodd (95 Misc 2d 996, supra) wherein the court held that assuming a paternity action survives the death of the person liable, the adverse party to whom service must be directed is the personal representative of the decedent. Also *384 Matter of Gordon v Cole (54 Misc 2d 967, supra) wherein an order of filiation was made against a deceased putative father, where the petition was joined in by all members of the deceased’s family and there was no opposition.

. See cases involving the rights of parents of illegitimate children and of illegitimate children themselves cited in this court’s decision in Matter of Pierce v Yerkovich (80 Misc 2d 613, 615, n 1).

. The Court of Appeals has recently held section 130.30 of the Penal Law (rape in the second degree) which also makes only the male guilty of a crime (a class D felony) constitutional (People v Whidden, 51 NY2d 457, supra).

. All other cases which follow the rule oí Riggs v Palmer (115 NY 506, supra) and cited by the court in Matter of Hines v Sullivan (105 Misc 2d 288, 289, supra) involved property or money.