## David Lawrence v. Ann Marie Limoge

[546 A.2d 802]

No. 86-280

Present: **Allen, C.J., Peck and Dooley, JJ., Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed April 29, 1988

*Robert A. Sheftman*, Montpelier, for Plaintiff-Appellee.

*Peter F. Langrock* and *Heather R. Wishik* of *Langrock Sperry Parker & Wool*, Burlington, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals the granting of visitation privileges with her daughter, Cassandra, to plaintiff, who claims to be the child's father. She also appeals the lower court's denial of her motion to dismiss for lack of subject matter jurisdiction. We agree that the superior court lacked jurisdiction to order visitation and remand with instructions for the superior court to dismiss the petition.

This case has a lengthy procedural history. Plaintiff initially filed a "Petition to Enforce Visitation" under 15 V.S.A. § 1032, the Uniform Child Custody Jurisdiction Act (UCCJA). He alleged that he and defendant had begun "a relationship" in June of 1981, and as a consequence of that relationship, defendant had given birth to Cassandra on April 9, 1982. He alleged he had acknowledged that he was the father and had made some contributions to the support of the child. He also alleged that he had made numerous attempts to visit Cassandra but had not been permitted to do so. In his prayer for relief, he asked the court to "grant him specific and permanent visitation rights and privileges regarding his daughter, Cassandra Limoge."

The day the superior court received the petition, it scheduled a hearing to be held seven days later. After the hearing the court ordered, inter alia, that plaintiff contribute to Cassandra's support and be allowed to have visits with her. The court made no finding as to paternity.

Defendant then filed an answer to the petition denying that she and plaintiff ever had a relationship, admitting only that they dated once or twice in July of 1981. She further alleged that they stopped seeing each other after plaintiff sexually assaulted her. She vigorously denied that he was the father of Cassandra. In the answer she stated that she believed he had made nominal child support payments in 1982, as she had been receiving support from the Department of Social Welfare and had named plaintiff, along with another man, as possible fathers of Cassandra. She alleged that she had never received support directly from plaintiff and never would accept any, since it was her position that he was not the father of her child. She admitted that he had requested visits with Cassandra in the summer of 1985, although not previously. She also alleged that he had told both her and her mother that since defendant refused to date him in the summer of 1985, "he would make it difficult for her through the child." Defendant requested that the court dismiss the petition and further, "that no contact or visitation be permitted between the parties until paternity is established and the [plaintiff] receive appropriate mental evaluation to determine any suitability for visitation should there be a finding of paternity."

There were two hearings on the merits, with a final order granting plaintiff visitation rights. Again, no specific finding on paternity was made in the order. A modified order detailing a new visitation schedule was later issued, but as in the earlier order, the court made no determination of paternity.

Subsequent to the modified order, defendant filed a motion to dismiss on the grounds that the superior court lacked subject matter jurisdiction over plaintiff's claim. The court denied the motion, finding that, while plaintiff had erroneously brought his petition under the UCCJA, his complaint pleaded facts from which jurisdiction could be "inferred" under 15 V.S.A. § 293. That section is part of chapter 5, Desertion and Support, subchapter 3, Support of Spouse and Care of Children. It confers jurisdiction on the superior courts to make decrees concerning the care, custody, maintenance and education of minor children whose parents are living separately. 15 V.S.A. § 293.

We agree that the petition was improperly brought under the UCCJA. The UCCJA is intended to resolve jurisdictional disputes in child custody cases where more than one state may have jurisdiction. 1979, No. 136 (Adj. Sess.), § 1. As such, it does not

confer jurisdiction on a court not already possessing it. See 15 V.S.A. § 1032(a); see generally Uniform Child Custody Jurisdiction Act, Commissioners' Prefatory Note, 9 U.L.A. 111-14 (1979). Thus, the superior court was correct in determining that plaintiff could not bring an action under the UCCJA alone.

■ The trial court erred, however, in ruling that its jurisdiction under 15 V.S.A. § 293 could be "inferred" from the facts alleged. That statute is part of the subchapter entitled Support of Spouse and Care of Children, in the chapter on Desertion and Support. By its terms, this subchapter applies only when a couple is married. This Court held that jurisdiction to award support, under the predecessor to this statute, V.S. 1947, § 3253, exists only when a spousal relationship exists. *Loeb* v. *Loeb*, 118 Vt. 472, 481-82, 114 A.2d 518, 525 (1955). The parties here have never been married; thus the trial court had no jurisdiction over this case under 15 V.S.A. § 293.

Plaintiff is not without a remedy, however. Vermont has a "parentage statute," whereby paternity may be established and the rights and obligations of parentage — child support, custody and visitation — determined. 15 V.S.A. §§ 301-306. The Parentage Proceedings Act provides that "[a]n action to establish parentage . . . may be brought by . . . a person alleged or alleging himself or herself to be the natural parent of a child . . . ." 15 V.S.A. § 302(a). Prior to the enactment of the Parentage Proceedings Act, there was no statutory provision allowing a putative father to bring an action to determine paternity of an illegitimate child. The subchapter, Maintenance of Bastard Children, repealed when the Parentage Proceedings Act became effective, provided only that the mother of an illegitimate child, or the commissioner of social welfare on her behalf, could initiate a paternity action. 15 V.S.A. §§ 331, 371 (repealed 1984).

■ Additionally, at common law a putative father could not bring an action to determine the paternity of an illegitimate child. See *Carty* v. *Martin*, 233 Kan. 7, 9, 660 P.2d 540, 543 (1983); *In re TRG*, 665 P.2d 491, 497 (Wyo. 1983). Since the Parentage Proceedings Act gives the putative father a cause of action not previously existing, it is in derogation of the common law and must be strictly construed. *Committee to Save the Bishop's House, Inc.* v. *Medical Center Hospital of Vermont, Inc.*, 137 Vt. 142, 152, 400 A.2d 1015, 1020 (1979). Neither this Court, nor the trial court, may "infer" jurisdiction to determine the visitation privileges of a

putative father in an action brought under a statute other than the Parentage Proceedings Act. Nor can the petition here be deemed to have been brought under the provisions of that act, since complaints brought thereunder must be verified. 15 V.S.A. § 303(b). That statute also provides certain procedural safeguards, including the right to a jury trial. 15 V.S.A. § 303(c). Consequently, the trial court did not have subject matter jurisdiction over the petition and should have granted defendant's motion to dismiss.

*Reversed and remanded, for the superior court to dismiss the action for lack of subject matter jurisdiction.*