2007 VT 89

## Robert LeCLAIR v. Cheryl REED, On Behalf of Her Daughter, Rose Reed

[939 A.2d 466]

No. 05-557

¶ 1. August 30, 2007. Appellant Robert LeClair appeals from a Windsor Family Court decision dismissing his action to establish parentage of, and rights and responsibilities for, a child conceived during a sexual assault he committed on appellee's daughter, a minor at the time.[1] We reverse and remand for a hearing.

¶ 2. The relevant facts and procedural history may be briefly summarized. In January 2005, appellant pleaded guilty to the sexual assault. At the time of the assault, appellant was thirty-seven and appellee's daughter was fifteen. See 13 V.S.A. § 3252(a)(3) (1998) (prohibiting sexual acts with persons under the age of sixteen).[2] In February 2005, appellant filed a complaint seeking to establish parentage, parental rights and responsibilities, parent-child contact, and child support.[3] Appellant dismissed the action

---

[1] Appellee's daughter is no longer a minor.

[2] The sexual-assault statutes have since been amended. 2005, No. 192 (Adj. Sess.), § 10. Under the current version of the statute, the sexual contact remains illegal. 13 V.S.A. § 3252(c).

[3] The complaint was originally filed against the Office of Child Support (OCS) and the minor victim of the sexual assault, but was then amended to proceed against OCS and the minor's legal guardian, her

voluntarily in early May 2005 in order to "get to a point in [his] treatment that [would] allow [him] to have visitation with [his] son." He then moved to reopen in July of that year. The motion to reopen was accompanied by appellant's affidavit stating that his treatment program would now allow him supervised visitation with the baby. Appellee opposed the motion and also moved to dismiss the action on the basis that appellant lacked standing to pursue the claim. In November 2005, the family court granted appellant's motion to reopen but simultaneously granted appellee's motion to dismiss. This appeal followed.

### I. The Motion to Reopen

¶ 3. In granting the motion to reopen, the family court concluded from the plain language of 15 V.S.A. § 302 that the Legislature intended "[a]ny person alleging [themselves] to be the natural father" to have standing to pursue a parentage claim. The family court also concluded that appellant's pleading was sufficient to put appellee on notice of the claims against her. V.R.C.P. 7(b)(1). Appellee contends that the family court erred in granting the motion, because parentage proceedings should be entirely closed to putative parents who, like appellant here, father children by sexual assault. She also continues to argue that appellant's motion failed to set forth a concise statement of the relevant facts and the relief sought, and that the motion therefore ought to have been denied under V.R.C.P. 7. We disagree with appellee on both grounds.

¶ 4. We review the family court's decision to grant the motion to reopen for abuse of discretion. See *Riehle v Tudhope*, 171 Vt. 626, 628-30, 765 A.2d 885, 888-90 (2000) (mem.). The family court noted that, although the Parentage Proceedings Act must be strictly con-

mother. OCS was subsequently removed as a party.

strued because it is in derogation of the common law, *Lawrence v. Limoge*, 149 Vt. 569, 572, 546 A.2d 802, 804 (1988), it provides a cause of action for any "person alleged or alleging himself or herself to be the natural parent of a child." 15 V.S.A. § 302(a). As the family court noted, at least one state legislature has seen fit to deny standing to contest a termination of parental rights to "a biological father of [a child] conceived as a result of rape or incest." N.M. Stat. Ann. § 32A-5-19 (1978). Our Legislature, however, made no such exception in the law it adopted, and instead provided broad standing, via § 302, for "any person" claiming to be the father of a child to pursue a parentage action. See also 15A V.S.A. § 2-402 (enumerating the persons from whom consent for adoption is not required and allowing for adoption without consent of "a person whose parental relationship to the minor has been judicially terminated or determined not to exist"). *Id.* § 2-402(a)(2). Our statutes do not expressly or implicitly limit the class of people with standing to bring parentage actions.

¶ 5. Accordingly, we must conclude that the family court did not abuse its discretion in granting the motion to reopen. Where the language of a statute is clear, our inquiry is at an end and "we apply the statute in accordance with its plain meaning." *Wright v. Bradley*, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893. The plain meaning of § 302 is that the Legislature intended to confer standing on any "person alleged or alleging himself or herself to be the natural parent of a child." 15 V.S.A. § 302(a). Appellant made precisely this allegation in plain terms sufficient to put appellee on notice of the claim, and we find no error — and certainly no abuse of discretion — in the family court's decision to grant the motion to reopen.

### II. The Motion to Dismiss

¶ 6. We do find error, however, in the trial court's grant of appellee's motion to

dismiss. Motions to dismiss for failure to state a claim are "not favored and rarely granted." *Ass'n of Haystack Prop. Owners v. Sprague*, 145 Vt. 443, 446-47, 494 A.2d 122, 125 (1985) (citation omitted). Motions to dismiss under V.R.C.P. 12(b)(6) should be granted only where it is "beyond doubt that there exist no facts or circumstances that would entitle . . . plaintiff to relief." *Richards v. Town of Norwich*, 169 Vt. 44, 48, 726 A.2d 81, 85 (1999) (quotations and citation omitted). "[C]ourts should be especially reluctant to dismiss [a cause of action] on the basis of pleadings when the asserted theory of liability is novel or extreme." *Haystack Prop. Owners*, 145 Vt. at 447, 494 A.2d at 125. In reviewing the family court's dismissal for failure to state a claim on which relief can be granted, we take all factual allegations in the complaint as true. *Richards*, 169 Vt. at 48-49, 726 A.2d at 85. We assume that "all contravening assertions in defendant's pleadings are false." *Id.* at 49, 726 A.2d at 85.

¶ 7. The Legislature has expressly stated a preference for contact between children and their natural parents, except where direct physical or emotional harm to the child or a parent is likely to result from such contact. 15 V.S.A. § 650. Parental rights and responsibilities are to be determined "for the benefit of all children, regardless of whether the child is born during marriage or out of wedlock." *Id.* § 301. It is abundantly clear, however, that neither public policy nor our statutes dictate that the parent-child relationship be maintained without regard to the emotional cost to the child. 15 V.S.A. § 650; *In re M.B.*, 162 Vt. 229, 239, 647 A.2d 1001, 1007 (1994). Indeed, termination or denial ab initio of parental rights is expressly envisioned; 33 V.S.A. § 5540, which defines the "best interests of the child," contemplates that a judicially mandated end to the relationship may be in the best interests of the child. With these standards in mind, we consider the family court's disposition of the motion to dismiss.

¶ 8. Here, for purposes of evaluating the motion, the family court was required to take as true appellant's assertions in his pleadings with the court. Appellant's pleadings uniformly stated that the mother of the child — as distinct from mother's mother, who was the named defendant in the family court and is the appellee here — did not necessarily oppose the establishment of parental rights and responsibilities, and wanted to become pregnant in the first instance. But, in its order, the family court characterized appellant's sexual contact with Reed as a "forcible" assault and stated that "the mother of the child opposes" the establishment of parentage, allegations which were not advanced by appellant.[4]

¶ 9. The family court noted that it had found "no case in which a father has been precluded from asserting parental rights, solely because the child was conceived as a result of a statutory rape, in the absence of a statute governing the issue." The family court went on to grant appellee's motion to dismiss on the basis that the court did "not endorse the establishment of paternal benefits as a result of conception resulting from a criminal sexual assault, at least where the mother of the child opposes it," citing the "public policy of denying the criminal the right to pursue parentage and revictimize his crime victim." The court concluded that there was no set of facts under which a convicted perpetrator of sexual assault on a minor could ever be found to be a parent of the child resulting from that crime.

---

[4] As a matter of law, of course, appellee's daughter could not have consented to the sexual act at issue here. *State v. Deyo*, 2006 VT 120, ¶ 18, 181 Vt. 89, 915 A.2d 249; *State v. Hazelton*, 2006 VT 121, ¶ 32, 181 Vt. 118, 915 A.2d 224. We have not similarly decided, however, that sexual acts committed with minors are "forcible" per se. We express no opinion on that question today.

¶ 10. Our research, like the family court's, reveals no case squarely facing the question before us. There are two New York cases that are close. See *La-Croix v. Deyo*, 437 N.Y.S.2d 517 (Fam. Ct. 1981); *Craig V. v. Mia W.*, 500 N.Y.S.2d 568 (App. Div. 1986). In *LaCroix*, the family court did not apply the shopworn rule that a wrongdoer should not benefit from his wrongful acts, noting that the rule had traditionally been applied only in cases involving property or money. *La-Croix*, 437 N.Y.S.2d at 523. The *LaCroix* court noted, in this regard, that the rule failed to account for the "potential benefits to the child of an adjudication of [the statutory rapist's] paternity." *Id.* Similarly, in *Craig V.*, the appellate division held that "[t]he commission of the crime of statutory rape does not preclude [the rapist's] right to maintain the paternity and custody proceedings. That conduct is to be considered only as it relates to the child's best interest at the custody hearing." *Craig V.*, 500 N.Y.S.2d at 570.[5]

¶ 11. Many courts have imposed parentage and its attendant liabilities (principally child support) on a minor parent when an adult woman conceived a child via unlawful sexual intercourse with a male minor. See, e.g., *S.F. v. State ex rel. T.M.*, 695 So. 2d 1186, 1188-89 (Ala. Civ. App. 1996) (noting that, under Alabama law, "the interests of the . . . child are deemed to be paramount to those of the other parties to the [parentage] proceeding") (citation and quotations omitted); *Hamm v. Office of Child Support Enforcement*, 985 S.W.2d 742, 746 (Ark. 1999); *Dep't of Revenue ex rel. Bennett v. Miller*, 688 So. 2d 1024, 1026 (Fla. Dist. Ct. App. 1997); *State v. Hermesmann*, 847 P.2d 1273, 1279 (Kan. 1993); *Jevning v. Cichos*, 499 N.W.2d 515, 517-18 (Minn. Ct. App. 1993); *In re Paternity of K.B.*, 104 P.3d 1132, 1134 (Okla. Civ. App. 2004).

¶ 12. The cases cited above, of course, do not cleanly answer the question before us. They do, however, give some guidance. The cases uniformly arise under schemes that, like ours, generally require the court to give foremost consideration to the welfare of the child to whose benefit a particular parental obligation might inure. And the courts in the above-cited cases all placed the welfare of the child above that of the parents, as should also be done where one of the parents was a minor victim of a sexual assault and the other the perpetrator.[6] We conclude that the

---

[5] Other courts that have faced questions similar to the one before us have done so with the benefit of more explicit legislative guidance. For example, the Alaska Supreme Court has upheld the termination of a father's parental rights, and an adoption without the father's consent, where the child was conceived during a sexual assault. *In re A.F.M.*, 15 P.3d 258, 269 (Alaska 2001) (citing Alaska Stat. § 25.23.180(c)(3)). The statute at issue in *A.F.M.* provided that all legal relations between a parent and a child could be terminated upon finding that (1) the child was conceived via a sexual assault committed by the parent, and (2) "that termination of the parental rights of the biological parent is in the best interests of the child." Alaska Stat. § 25.23.180(c)(3). The Idaho legislature has taken a different approach by providing that the family court may rebuttably presume that termination is in the best interests of the

child when the putative parent conceived the child via a statutory rape. Idaho Code Ann. § 16-2005(2)(a). Our Legislature has not given us such an explicit command, and these cases therefore do not provide clear guidance.

[6] In addition, as the Alaska Supreme Court noted in *A.F.M.*, the purpose of an adoption or parentage proceeding is not to punish a putative parent for past misconduct, but rather to establish the physical and legal rights and responsibilities that most effectively further the best in-

logic of the above-cited cases applies to the facts presented here, and that the family court erred in dismissing the action before a factual record was developed.

¶ 13. One need look no further than our recent decision in *Miller-Jenkins v. Miller-Jenkins* to appreciate the importance of a well-developed factual record in making parentage determinations. 2006 VT 78, ¶ 56, 180 Vt. 441, 912 A.2d 951. Cf. *Shepherd v. Clemens*, 752 A.2d 533, 538-42 (Del. 2000) (conducting fact-intensive analysis of whether a termination of statutory rapist's parental rights would be in the best interests of the child born of the rape). A parentage determination made in a factual vacuum would not serve — or would serve only by happenstance — the explicit purpose of parentage proceedings, which is "that the legal rights, privileges, duties and obligations of parents be established *for the benefit of all children*, regardless of whether the child is born during marriage or out of wedlock." 15 V.S.A. § 301 (emphasis added).

¶ 14. We note also that the determination of parentage is distinct from determinations of parental rights and responsibilities, which in the context of benefit to the child may depend upon the age and consent of the custodial parent. In a matter involving a child conceived by rape, for instance, the unwillingness of the victim of the rape to consent to parent-child contact could be a factor in a court's review of a claim by the father of the child. 15 V.S.A. § 650. A person may be adjudicated a parent and yet be denied parent-child contact, rights or responsibilities, or be permitted minimal or no contact with either the child or the other

terests of the child. 15 P.3d at 266. We see no reason that this logic would not hold under the facts before us; the express purpose of the parentage proceeding our Legislature established is to protect the best interests of the child. 15 V.S.A. § 301.

parent, if such limitations are found to be in the best interests of the child. See 15 V.S.A. § 306 (judgment in parentage action may determine parentage alone, or may include provisions "relating to the obligations of parentage, including future child support, visitation and custody"). But an adjudication of paternity, unaccompanied by legal or physical rights and responsibilities, secures to the child many otherwise unavailable legal rights.[7] Our holding does not foreclose the possibility that appellant will not gain any parental rights or responsibilities on remand. We venture no opinion, on this bare record, as to how the family court should rule on rights of support, visitation, and custody once they are presented against a more complete factual backdrop.

¶ 15. For the foregoing reasons, the case is remanded for parentage — and, if necessary, parental rights and responsibilities — determinations to be made based on a more fully developed factual record.

*Reversed and remanded.*

---

[7] Such rights include inheritance rights, 14 V.S.A. § 551; the right to bring certain causes of action, e.g., wrongful death, 14 V.S.A. § 1492(c); and rights to certain monies that may accrue to father at a later date, such as child-support offsets against wages and lottery winnings, 15 V.S.A. §§ 781, 792; workers' compensation death benefits, 21 V.S.A. § 632; retirement benefits, 3 V.S.A. § 476a, 16 V.S.A. § 1946b, 24 V.S.A. § 5066a. A mere determination of parentage activates some of these rights; others require an earlier imposition of, for example, child-support obligations.