IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 20, 2009 Session

## CYNTHIA DIANE FREE v. JAMES JASON FREE, ET AL.

**Direct Appeal from the Chancery Court for Henry County**
**No. 18990     Ron E. Harmon, Chancellor**

_____

**No. W2008-01329-COA-R3-CV - Filed February 17, 2009**

_____

This is a post-divorce action seeking a change in child custody. The initial action was filed by the natural mother, the Appellee herein, and the trial court determined that primary residential custody should be with her. The paternal grandparents, the Appellants herein, also moved the court for custody of the two minor children. The trial court denied the grandparents' petition for custody. The grandparents appeal. Finding no error, we affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Larry J. Logan, McKenzie, TN, for Appellants, James Jason Free, Hank Stanfield and Frankie Stanfield

James H. Bradberry, Dresden, TN, for Appellee, Cynthia Diane Free

**OPINION**

Appellee Cynthia Diane Free and James Jason Free were divorced by order of the Chancery Court of Henry County on April 9, 2003. On August 10, 1997, two children were born to the marriage–twin girls, J.L.F. and J.A.F. Concurrent with the order of divorce, the trial court entered a Permanent Parenting Plan, naming Mr. Free as the primary residential parent, and giving Ms. Free visitation with the children. Following the divorce, Mr. Free moved into the Appellants Hank and Frankie Stanfield's home. Frankie Stanfield is Mr. Free's mother; Mr. Stanfield is his step-father. Although the exact date is not clear in the record, at some point, Mr. Free moved from the Stanfields' home, leaving the two children in the Stanfields' care.

On October 16, 2006, after Ms. Free discovered that her ex-husband had moved from the home and left the children in the care of the Stanfields, Ms. Free filed a petition to modify the

previous child custody order, requesting that she be named primary residential parent. Mr. Free then filed a motion to dismiss Ms. Free's petition. By Order of May 16, 2008, the trial court granted Ms. Free's petition and named her the primary residential parent of the children.

On August 8, 2007, the Stanfields intervened and petitioned the court for custody of the children. In their petition, the Stanfields alleged that Ms. Free was living with a registered sex offender, that she repeatedly failed to supervise the children, and that her treatment of the children posed a substantial risk of physical and emotional harm. Following a hearing on February 19, 2008, the trial court denied the Stanfields' petition for custody.

The Stanfields and Mr. Free appealed this decision; however, at oral argument, counsel for Mr. Free informed the Court that his client no longer wished to pursue the appeal. Consequently, the Stanfields are the sole appellants herein. The issues, as stated in their brief, are as follows:

> 1. Was there a material change in circumstances, occurring subsequent to the initial custody determination, sufficient to change the designation of the primary residential parent from James Jason Free, the natural father, to Cynthia Diane Free, the natural mother?

> 2. Were the actions of the natural mother, Cynthia Diane Free, and her family sufficient to cause the presumption of superior parental rights to be forfeited?

> 3. If so, does the evidence justify a change of custody to the paternal grandparents, Hank Stanfield and wife, Frankie Stanfield?

We note that, because Mr. Free is no longer a party to this appeal, we pretermit issue one, which contests the custody award to Ms. Free. The sole issue before this Court is whether the trial court erred in denying the Stanfields' petition for custody.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See **McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn.1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997). The weight, faith, and credit to be given to any witness' testimony lies, in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See **id.***; *see also **Walton v. Young***, 950 S.W.2d 956, 959 (Tenn.1997).

The Stanfields petitioned the court for custody of the children. Based upon the evidence, the trial court denied their request. As discussed in *Richards on Tennessee Family Law:*

[E]ven though the best interest of the child is the paramount concern of the court in making custody determinations, a constitutional right of privacy arises when the custody dispute is between a natural parent and a third party. In a series of recent cases, the supreme court has made clear the rule that in a custody dispute between a third party and a natural parent, the parent may not be deprived of custody without a showing of parental unfitness or a showing of substantial harm to the child. The supreme court reaffirmed the doctrine of superior parental rights in *Blair v. Badenhope* as follows:

> Through Article I, section 8 and its implicit recognition of parental privacy rights, our Constitution requires that courts deciding initial custody disputes give natural parents a presumption of "superior parental rights" regarding the custody of their children. Simply stated, this presumption recognizes that "parental rights are superior to the rights of others and continue without interruption unless a biological parent consents to relinquish them, abandons his or her child, or forfeits his or her parental rights by some conduct that substantially harms the child."

Janet L. Richards, *Richards on Tennessee Family Law* § 8-(3)(b)(8) (3d ed. 2008) (footnotes omitted).

The trial court specifically found that Ms. Free's parental rights were paramount to those of the Stanfields. In order to overcome that finding, the record must contain proof that Ms. Free is either unfit, or that she poses a substantial risk of harm to the children. We have reviewed this record, and find no evidence to support either of these conclusions.

The Stanfields' primary objection to Ms. Free's being named the custodial parent seems to be the fact that she dated a registered sex offender. Although Ms. Free does not deny having a brief relationship with this man, the record indicates that, at that time, Ms. Free had no knowledge of his status as a sex offender. Moreover, the record indicates that the relationship between Ms. Free and this man was never serious, that the children were never unsupervised with him and, more importantly, as soon as Ms. Free was informed that this man was a sex offender, her response was exactly as it should have been–she stopped seeing him immediately. There is no indication that Ms. Free is currently seeing this man, or that she has any plans to resume a relationship with him in the future.

The Stanfields also rely upon the fact that, in 2003 (when the children were five years old), Child Protective Services of Kentucky received a report that Ms. Free's mother had physically abused one of the children by hitting her with a belt. This investigation was considered by the trial

court, which ordered that the children's visitation with Ms. Free be supervised by Ms. Free's sister. The mandate for supervised visitation was lifted by the trial court in 2005. There is no indication in the record that Ms. Free failed to comply with the supervised visitation. Furthermore, the report from the Kentucky Child Protective Services indicates only that Ms. Free's mother overreacted in her punishment of the child; there is no finding that Ms. Free was abusive. It appears from the record that this was an isolated event. There have been no further investigations of Ms. Free or her family, nor were there any proven incidents prior to this.

This court addressed this same issue in **_Elmore v. Elmore,_** 173 S.W. 3d 447 (Tenn. Ct. App. 2004). In **_Elmore_**, now Justice Sharon Lee wrote the following:

> In a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.

> *In Re Adoption of Female Child (Bond v. McKenzie).* 896 S.W.2d at 548.

> Further, this Court has held that the required showing of risk of substantial harm to the children must be demonstrated by clear and convincing evidence**. _Ray v. Ray_**, 83 S.W.3d 726, 733-34 (Tenn. App. 2001); **_Hall v. Bookout,_** 87 S.W. 3d 80, 86 (Tenn. App. 2002); **_Henderson v. Mabry_**, 838 S.W. 2d 537, 540 (Tenn. App. 192).

> As the Supreme Court discussed in **_Blair v. Badenhope_**, 77 S.W.3d 137 (Tenn. 2002),the applicable analysis is somewhat different when a natural parent is seeking to modify a valid order granting custody to a non-parent. But [**6] in the present case, there is no prior decree granting custody to a non-parent, and so the Grandparents and Aunt were required to make a showing, by clear and convincing evidence, that granting custody to Father subjected the children to a risk of substantial harm.

**_Elmore_** at 449

In order for the Stanfields to prevail they were required to show by clear and convincing evidence that allowing Ms. Free to have custody of the children subjected them to a risk of substantial harm. Our review of the record reveals they failed to meet their burden of proof.

Based on the foregoing, we affirm the decision of the trial court. The costs of this appeal are assessed against the Appellants, Hank and Frankie Stanfield, and their surety.

_____
J. STEVEN STAFFORD, J.