IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 6, 2010 Session

## LINDSI ALLISON CONNORS v. JEREMY PHILLIP LAWSON

**Appeal from the Circuit Court for Bradley County**
**No. V-06-126     Lawrence H. Puckett, Judge**

_____

**No. E2010-00791-COA-R3-CV - FILED DECEMBER 6, 2010**

_____

Lindsi Allison Connors ("Mother") and Jeremy Phillip Lawson ("Father") are the parents of a daughter (the "Child") who currently is eight years old. Several parenting plans have been entered over the years. Mother eventually moved with the Child to Florida, and thereafter, Father filed a petition claiming there had been a material change in circumstances such that it was in the Child's best interest for him to be designated the primary residential parent. Father also sought to have Mother held in contempt of court. Following a hearing, the Trial Court found Mother in contempt but refused to mete out any punishment for the contemptuous conduct. The Trial Court made no mention in its final judgment as to the petition for a change in custody. The Trial Court then abdicated jurisdiction and instructed the parties to take up any future matters with the Florida courts. We vacate the Trial Court's judgment and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Vacated; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the Appellant, Jeremy Phillip Lawson.

Lindsi Allison Connors, pro se Appellee.

# OPINION

## Background

The record in this case begins with a petition to establish parentage filed by Father in February 2006. In this petition, Father claimed that he believed he was the biological father of the Child born on July 12, 2002, but he could not be certain due to statements made by Mother. Father requested a DNA test. Mother responded to the petition and admitted that Father was the Child's biological father. An Agreed Order was entered stating that the parties would undergo a DNA test and that Father would pay for this testing. The DNA test was performed, and Father was determined to be the Child's biological father.

Both parties submitted proposed parenting plans to the Trial Court. In July 2006, the Trial Court entered an order adopting the plan submitted by Mother, except that Father was given more co-parenting time than originally suggested by Mother. In this parenting plan, Mother was designated as the primary residential parent. The Trial Court stated, however, that Mother "will continue to live with her mother and should she desire to move out, the parties will bring this case back to this Court for further orders regarding the Parenting Plan." Father was ordered to pay child support every week in the amount of $113.08.

In June 2007, Father filed an "Ex Parte Petition for Emergency Custody, Petition to Prevent [Mother] from Removing the Parties' Minor Child From Bradley County, Tennessee and Petition for Modification." In this petition, Father claimed that he was abruptly informed by Mother that she had moved to Jacksonville, Florida with the Child. Father claimed that prior to Mother's moving, he had been exercising more parenting time than set forth in the parenting plan because the parties intended that they both be equally involved in the Child's life. According to Father, Mother was vacationing in Jacksonville, Florida and "met a guy and married him." Father stated that Mother's behavior had become erratic, she could not maintain stable employment, she was unable to provide for the Child's emotional and physical needs, and she was in direct violation of the Trial Court's order that the Trial Court must be informed should Mother move out of her mother's residence.

The Trial Court granted the petition and entered an ex parte order vesting temporary custody of the Child with Father and ordering Mother to immediately deliver the Child to Father. A hearing took place soon after the ex parte order was entered. Both parties testified at the hearing, following which the Trial Court entered a new parenting plan which gave each parent alternating two week periods with the Child until the Child started school. Mother was allowed to relocate to Florida. In determining child support, the Trial Court imputed to Mother income of $5.85 per hour based on a 40 hour work week.

-2-

In July 2009, Mother was proceeding pro se and filed an "Ex Parte Petition for Emergency Custody, Petition to Prevent Respondent from Keeping Minor Child and not Returning Child at Discussed Time, Dening (Sic) Contact with Child and (Sic) the Unknown Location of Minor Child and Knowingly Disregaurding (Sic) Parenting Plan and Judge's Wishes and Petition for Modification." In this petition, Mother claimed that Father was: (1) living with his pregnant girlfriend; (2) denying Mother her phone contact with the Child; (3) refusing to tell Mother the location of the Child when in Father's care; (4) refusing to allow Mother co-parenting time on July 4th and 5th in contravention of the parenting plan; (5) not paying child support consistently and was failing to provide health insurance for the Child; (6) unable to maintain stable employment; and (7) unable to adequately care for the Child, necessitating immediate action by the Trial Court.

Father responded to the petition and acknowledged that he was behind in child support payments but indicated he would get caught up with his income tax return. Father denied the remaining pertinent allegations contained in Mother's petition. Father also filed a motion to modify child support. Father claimed that even though his income was only $1,680 per month, he was required to pay $369 per month in child support and an additional $339 per month for health insurance on the Child. Father noted that he only had approximately 65 days of co-parenting time because Mother had moved out of state. Father requested that his child support payments be reduced and his co-parenting time be increased.

In March 2009, Father filed a petition for contempt and to change custody. Father claimed Mother was not abiding by the terms of the parenting plan and was being verbally and mentally abusive to the Child. Father asserted that it would be in the Child's best interests for him to be designated as the primary residential parent. The Trial Court entered an order finding Mother in contempt, and she was "admonished to comply with the Parenting Plan." Mother was ordered to pay $500 toward Father's reasonable attorney fees incurred in the contempt proceedings. A final hearing was scheduled for September 2009 with respect to Father's petition to change custody.

Proceeding pro se, Mother filed a petition for recognition and enforcement of order with the Circuit Court in Duval County, Florida. Mother also filed a motion with the Bradley County Circuit Court requesting that Court "relinquish jurisdiction to the Fourth Circuit [Court] for Duval County, Florida."

Following a hearing at which both parties testified and which was supposed to resolve all outstanding issues, the Trial Court entered an order stating as follows:

> 1.     [Mother] is in Contempt of the prior Orders of this
> Court by failing to provide Summer co-parenting time to

[Father] as was provided in the Permanent Parenting Plan and by failing to provide co-parenting time with [Father] when she made a trip to Tennessee from her residence in Florida.

2.      The Court further finds that [Mother] is in Contempt of the prior Orders of this Court by interfering with reasonable telephone contact between [Father] and the minor child and by making derogatory comments to the minor child about [Father].

3.      The Court declines to impose any punishment upon [Mother] for her Contempt.

4.      [Father] is not awarded any attorney fees for the bringing of this action.

5.      The Court further finds that it will no longer exercise jurisdiction over this matter and Orders that any further proceedings between the parties must be filed in the State of Florida.

6.      The cost of this case are taxed to [Mother] for which execution may issue if necessary.

Father appeals claiming the Trial Court erred when it failed to find that there had been a material change in circumstances such that it would be in the Child's best interest for him to be designated as the primary residential parent. Father also claims that the Trial Court erred when it failed to award him attorney fees incurred in the prosecution of the contempt charges. Finally, Father claims the Trial Court erred when it abdicated jurisdiction and ordered that any new matters between the parties must be filed in the Florida courts. Mother asks that we affirm the judgment of the Trial Court.

**Discussion**

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower

-4-

courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first will discuss whether the Trial Court erred by not designating Father as the Child's primary residential parent. Existing custody arrangements are favored since children thrive in stable environments. *Aaby v. Strange*, 924 S.W.2d 623, 627 (Tenn. 1996); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A custody decision, once made and implemented, is considered *res judicata* upon the facts in existence or those which were reasonably foreseeable when the initial decision was made. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). Our Supreme Court, however, has held that a trial court may modify an award of child custody "when both a material change of circumstances has occurred and a change of custody is in the child's best interests." *See Kendrick v. Shoemake*, 90 S.W.3d 566, 568 (Tenn. 2002). According to the *Kendrick* Court:

> As explained in *Blair [v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002)], the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. *Id*. at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." *Id*. (citations omitted).

*Kendrick*, 90 S.W.3d at 570. *See also* Tenn Code Ann. § 36-6-101(a)(2)(B)("If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child.…").

The *Kendrick* Court went on to explain that if a material change in circumstances has been proven, "it must then be determined whether the modification is in the child's best interests . . . according to the factors enumerated in Tennessee Code Annotated section 36-6-106." *Kendrick*, 90 S.W.3d at 570. It necessarily follows that if no material change in circumstances has been proven, the trial court "is not required to make a

best interests determination and must deny the request for a change of custody." *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999).

There is no question that Father filed a petition seeking to be designated as the Child's primary residential parent. The final judgment entered by the Trial Court, however, makes no mention whatsoever of whether Father had proven a material change in circumstances. We acknowledge that following the hearing, the Trial Court did state that it was "going to deny the motion to modify" and then immediately proceeded to relinquish jurisdiction in this case. This is insufficient to resolve the custody issue when no mention is made of this issue in the final judgment. In *Elmore v. Elmore*, 173 S.W.3d 447 (Tenn. Ct. App. 2004), this Court stated that:

> It is a long-recognized rule that "a Court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. App. 1979) (internal quotations and brackets omitted).

*Elmore*, 173 S.W.3d at 449, 450.

Because the Trial Court did not reference in its final judgment whether Father had established what was necessary to change custody and designate him as primary residential parent, we vacate the Trial Court's judgment. This cause is remanded to the Trial Court for a determination as to whether Father had proven a material change in circumstances and, if so, whether designating Father as the primary residential parent is in the Child's best interest.

Father's next issue is his claim that he should have been awarded attorney fees after Mother was found to be in contempt of court. We acknowledge that trial courts have discretion with regard to punishing a party who is in contempt. *See Dhillon v. Dhillon*, No. M2009-02018-COA-R3-CV, 2010 WL 3025193, at *6 (Tenn. Ct. App. Aug. 2, 2010) (citing *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (Tenn.1964)). Mother, however, already had been found in contempt previously and ordered to pay $500 toward Father's attorney fees. This obviously was insufficient to convince Mother to comply with the Trial Court's orders because she was again found to have engaged in contemptuous conduct on several occasions. We agree with Father that Mother should be required to pay his reasonable attorney fees incurred in prosecuting the petition for contempt. On remand, the Trial Court is instructed to determine Father's reasonable attorney fees incurred in the prosecution of the petition for contempt and to enter a judgment for Father in this amount.

The final issue is Father's claim that the Trial Court erred when it abdicated its jurisdiction over this case and instructed the parties that any future matters must be taken up with the courts in Florida. Pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, Tenn. Code Ann. § 36-6-201, *et seq*., there are procedures that must be followed before a court of this state which has proper jurisdiction over the parties can abdicate that jurisdiction to another state due to the custodial parent and the child moving to that state. Along this line, we note that in July of 2009, well after moving to Florida, Mother expressly represented to the Trial Court that she was not contesting jurisdiction of the Bradley County Circuit Court and assured the Trial Court, apparently incorrectly, that she would comply with the orders of the court.

Tenn. Code Ann. § 36-6-222, expressly addresses when a court of this state which has jurisdiction over a child custody determination can decline to exercise continuing jurisdiction. None of the factors set forth in the statute were discussed or otherwise mentioned by the Trial Court when it abdicated jurisdiction. The Trial Court made no finding as to whether a court in Florida was a more convenient forum based on the relevant statutory factors. Father states in his brief on appeal that pursuant to Tenn. Code Ann. § 36-6-219(d), the Trial Court did contact the appropriate Florida Court, but that court expressly declined to exercise jurisdiction. There is nothing in the record either to support or contradict this assertion. Based on the record, we are unable to conclude that the Trial Court complied with the Uniform Child Custody Jurisdiction and Enforcement Act, Tenn. Code Ann. § 36-6-201, *et seq*., and we, therefore, vacate the judgment of the Trial Court insofar as it relinquished jurisdiction over this case.

On remand, the Trial Court is to: (1) determine whether Father has proven a material change in circumstances and, if so, whether it is in the Child's best interest to designate Father as primary residential parent; (2) determine the amount of reasonable attorney fees incurred by Father in prosecuting the petition for contempt and award him a judgment in that amount. After completing the foregoing, the Trial Court may relinquish jurisdiction only after complying with the Uniform Child Custody Jurisdiction and Enforcement Act, Tenn. Code Ann. § 36-6-201, *et seq*.

## **Conclusion**

The judgment of the Trial Court is vacated and this cause is remanded to the Circuit Court for Bradley County for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed to the Appellee, Lindsi Allison Conners, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE