IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 6, 2004 Session

# DAVID L. ELMORE v. MARY ROSANNA ELMORE v. JERRY RALPH MONDAY, ET AL

**Appeal from the Probate & Family Court for Cumberland County**
**No. 12,777      Steven C. Douglas, Judge**

---

**No. E2004-00301-COA-R3-CV - FILED DECEMBER 29, 2004**

---

This case involves a post-divorce custody dispute between the natural father and maternal grandparents and aunt of three children. The issue presented is whether the trial court erred in awarding custody to the grandparents and aunt when it made no finding in its order that an award of custody to the father posed a risk of substantial harm to the children. We hold that the record does not support such a finding of substantial harm, reverse the trial court's award of custody, and, pursuant to the father's constitutional right of privacy to rear and have custody of his children, we award the natural father custody and remand to the trial court to set appropriate visitation and support for the mother.

**Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the Probate & Family Court Reversed;**
**Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

C. Douglas Fields, Crossville, Tennessee, for the Appellant, David L. Elmore.

David Haines Rotroff, Chattanooga, Tennessee, for the Appellees, Jerry Ralph Monday, Brenda Joyce Monday, Melissa Renee Beaty, and David Wayne Beaty.

## OPINION

David L. Elmore ("Father") and Mary Rosanna Elmore ("Mother") were divorced by decree entered May 4, 2001. The decree of divorce awarded custody of the parents' three minor children, Brendana M. Elmore (DOB January 29, 1992), Jonathan David Elmore (DOB February 15, 1994) and Emily Elizabeth Elmore (DOB December 18, 1998) to Mother.

On September 4, 2002, Father filed a petition to change the children's primary residential parent designation from Mother to himself. His petition alleged, among other things, that Mother

"has abandoned her role and responsibility as a parent" and "has divided the [children] among her relatives, leaving the care of the minor daughters to her parents and the care of her minor son to her sister."

Mother answered, denying that primary residential parenting responsibility should be changed from her to Father, and making a counter-claim for contempt against Father for failure to pay child support. On October 17, 2003, a petition to intervene was filed by Mother's parents, Jerry Ralph Monday and Brenda Joyce Monday ("Grandparents"), and her sister, Melissa Renee Beaty ("Aunt") and Aunt's husband, David Dewayne Beaty.

The petition to intervene alleged that from January of 2001, the Grandparents "have had the exclusive and primary physical and residential care and custody of" the two girls, and that the Beatys have had similar "custody" of Jonathan during that time period. The petition further alleged as follows:

> That the Respondent, [Mother], from and after January of 2001, while the original custodian of said minor children, has abandoned her role and responsibility as the minor childrens' parent and has allowed the children to live with her parents (the Mondays) and her sister (Beaty). That from and after January of 2001, [Mother] has exhibited a lack of interest relative to the nurturing and care of the parties' three (3) minor children constituting a substantial and material change in the circumstances of the parties' three (3) minor children justifying a permanent change in the residential care and custody of these children.

After hearing the case on November 5, 2003, the trial court entered an order awarding custody of Brendana and Emily to the Grandparents, and custody of Jonathan to Aunt and her husband. Father appeals, raising the issue of whether the trial court erred in failing to award him custody.

The trial court made no finding in its order of final judgment that a material change of circumstances had occurred since the decree of divorce. However, Mother has not appealed the trial court's custody decision and is not a party to this appeal. None of the parties involved here argue that a change of circumstances did not occur.

This is in essence a custody dispute between the biological Father and the non-parent maternal relatives. The Supreme Court has provided guidance as to the proper procedure and analysis in situations such as this one on several occasions. *See In Re Adoption of Female Child (Bond v. McKenzie)*, 896 S.W.2d 546 (Tenn.1995); *Petrosky v. Keene*, 898 S.W.2d 726 (Tenn.1995); *In Re Askew*, 993 S.W.2d 1 (Tenn.1999). The Court has consistently stressed that a natural parent has a constitutional privacy interest which includes the important and fundamental right to the care and

custody of his or her children. *Id; see also Hawk v. Hawk,* 855 S.W.2d 573 (Tenn.1993); *Nale v. Robertson,* 871 S.W.2d 674 (Tenn.1994).

In light of this constitutional right, the *Bond* Court set forth the following two-part analysis:

> [I]n a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.

*In Re Adoption of Female Child (Bond v. McKenzie)*, 896 S.W.2d at 548.

Further, this Court has held that the required showing of risk of substantial harm to the children must be demonstrated by clear and convincing evidence. *Ray v. Ray,* 83 S.W.3d 726, 733-34 (Tenn. App.2001); *Hall v. Bookout,* 87 S.W.3d 80, 86 (Tenn. App. 2002); *Henderson v. Mabry*, 838 S.W.2d 537, 540 (Tenn. App.1992).

As the Supreme Court discussed in *Blair v. Badenhope,* 77 S.W.3d 137 (Tenn.2002), the applicable analysis is somewhat different when a natural parent is seeking to modify a valid order granting custody to a non-parent. But in the present case, there is no prior decree granting custody to a non-parent, and so the Grandparents and Aunt were required to make a showing, by clear and convincing evidence, that granting custody to Father subjected the children to a risk of substantial harm.

In its written order, the trial court did not make a finding of substantial harm, nor did it find Father to be an unfit parent. The trial court's order stated as follows in relevant part:

> [U]pon the sworn testimony of the witnesses and parties, the exhibits, and the entire record, the Court is of the opinion that it is in the manifest best interest of the original parties' three (3) children that their primary residential and physical custody be awarded to the Intervening petitioners.

At the close of the hearing, presented with the argument by Father's counsel that the Grandparents and Aunt had failed to show a risk of substantial harm, the trial court stated the following:

> I guess the good decision that was made was to allow the children to go live with the aunt and the grandparents. I think there's some substantial risk of harm for the children to be moved from this environment. I think it's in the best interest of the children for them to stay with the grandparents and the aunt.

"It is a long-recognized rule that a Court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." *State v. Bough,* 2004 WL 2481367 at *6 (Tenn. filed Nov.1, 2004) (internal quotations and brackets omitted). In this case, the trial court's order made no reference to oral pronouncements from the bench. Furthermore, it is apparent from the trial court's remark about "some substantial risk of harm" that it was likely made in an attempt to "shoehorn" what was clearly a best interests analysis to fit into a risk of substantial harm analysis. The court made no factual findings, oral or written, in support of a conclusion of substantial harm.

Notwithstanding the lack of findings, the parties presented evidence and argument to the trial court that there was (according to Grandparents and Aunt) or was not (according to Father) proof supporting a conclusion of risk of substantial harm if custody was awarded to Father. We therefore review the record to determine if it supports the conclusion, by clear and convincing evidence, of risk of substantial harm.

The Grandmother testified as follows about her concerns with transferring custody to Father:

> Q: Is there anything that you know about [Father] that presents itself or should be presented to this Court as to why these children should not be transferred to him in full residential custody?
>
> A: I just don't think he's going to be capable of taking care of three children, working, because it is a full-time job. My husband is retired. I mean, you know, he takes them to school. He goes and picks them up. He baby-sits them when there's no school, you know. And it's going to be hard on [Father] to work a full-time job and take care of three kids, two kids that has boo-coos of homework every night.
>
> *                  *                  *
>
> Q: Have you ever been to [Father's] house?
>
> A: The one he's in now?
>
> Q: Yes.
>
> A: No.
>
> Q: Well, you allege in your petition that he just doesn't have adequate physical accommodations.
>
> A: I was going by what Michelle told me.

Q: So she's been to his house?

A: Michelle, his daughter, yes.

Q: So you really don't have any knowledge of what you've alleged in here yourself, right?

A: No.

Q: You've never looked at it?

A: Not the one he's in now. No.

Q: Even though you say he's not a fit or proper person, really what you just testified to is you just don't think he's up to doing everything that you feel is necessary to raise these children.

A: I don't think it's going to be an easy task for him. No.


Mother testified that prior to their divorce, Father was physically abusive to her in front of the children. Mother also admitted having been charged with assault, theft and drug possession, the first two charges also occurring before the divorce. Mother further testified that she suffered from a methamphetamine and marijuana addiction, and she freely admitted giving false answers on interrogatories propounded to her in this case. There is no other evidence in the record suggesting Father had been physically abusive; Father testified that Mother "put something like 11 stitches in me one time."


The record is not entirely clear regarding how much visitation Father had with the children prior to February 2003. He testified that "I did as much as I possibly could," and Grandmother and Aunt testified that his visitation was sporadic. However, the evidence presented which causes the most concern was Father's testimony that from February 2003 until August 2003, he had no contact with his children. He testified that the reason for this absence was that he "was trying to catch" Mother, to find evidence supporting his petition for custody. During this time, Mother was living with Grandparents some of the time and with her fiancee at times. Father testified as follows regarding his ill-advised strategy:

It's been like two and a half years now. I mean, and I've done everything to try and get evidence on [Mother] and that's been real hard. And it came to a point where, you know, you said, you know, we're going to have to do something. I mean, something stinks. And I ran out of ideas. I got desperate.

Jerry [Grandfather] over there, he's a good grampa. I mean, I can't say nothing bad about the man. I think a lot of Jerry. But when I quit coming around, they just seen me no longer as a threat and they quit keeping such a tight rein on [Mother]. And I knew in

-5-

> my heart if they thought that I wasn't a threat that [Mother] would go back to her old ways, back into the partying and stuff, heavy, and it worked.

It is undisputed that Father fell behind on his child support payments. He testified without contradiction that he was unable to make them after he lost his job and had to file bankruptcy. Father is presently working at an $8.00 per hour job as a mechanic. He testified that since April 2003, roughly one-half of his paycheck has been garnished for child support, and that he received and accepted the garnishment notice without objection. The trial court found that Father's failure to make the full amount of child support payments was not willful.

At the time of the hearing, Father lived in a two-bedroom trailer. He testified that he was prepared and able to move to a three-bedroom if he should receive custody of the children. Father lives in the same school district that the children are in presently, so they will not have to change schools.

We believe the record is clear that Father has exercised poor judgment, particularly in his tactical effort to try to gain custody in a paradoxical and misguided way. But we are of the opinion that the evidence presented does not rise to a showing, by clear and convincing evidence, that the children will be subjected to a risk of substantial harm by granting him custody. Therefore, his constitutional parental right to the care and custody of his natural children must prevail in this case.

For the aforementioned reasons, the judgment of the trial court granting the Grandparents and Aunt and her husband custody is reversed. Father is hereby designated as the primary residential parent of his three minor children. This matter is remanded to the trial court for such further proceedings as may be necessary consistent with this opinion, said further proceedings to include consideration of the issue of Mother's child support obligation. Costs on appeal are assessed to the Appellees, Jerry Ralph Monday, Brenda Joyce Monday, Melissa Renee Beaty, and David Dewayne Beaty.

_____
SHARON G. LEE, JUDGE