OPINION OF THE COURT
Eric R. Adams, J.
The matter before the court is an application by petitioner that he be adjudicated the father of Tyfani. Tyfani was born May 2009. Since her birth, Tyfani has resided with her mother, Sky M.L.
The facts presented are largely uncontroverted. Petitioner began his relationship with Ms. L. in May 2008. He began having sexual intercourse with her in July 2008. By August 2008, petitioner was residing in respondent’s home with her and her parent. At about that same time, petitioner became aware respondent was pregnant through the use of a home pregnancy test. Respondent was 14 and petitioner was 19. It is clear from petitioner’s testimony, he was aware of respondent’s age during the period the parties engaged in sexual relations. It is acknowledged by all parties petitioner is the biological father of Tyfani.
A paternity proceeding may be commenced by the mother or by any person alleging to be the child’s father. (Family Ct Act § 522.) The proceeding may be commenced at any time during the pregnancy of the mother until the 21st birthday of the child. (Family Ct Act § 517.) Here, petitioner has established standing to bring the action and has done so in a timely manner. Though the results of the genetic marker test were not placed in evidence, no one has challenged petitioner’s genetic connection to Tyfani and, therefore, the court finds petitioner has established, by clear and convincing evidence, the elements necessary for an order of filiation.
Counsel for respondent mother and the Attorney for the Child (AFC) argue the establishment of paternity through the entry of an order of filiation declaring petitioner to be the father of Tyfani is contrary to Tyfani’s best interests and should be denied. They cite a variety of factors including the inap *561 propriateness of the relationship between petitioner and respondent mother, the petitioner’s forced absence as a result of his incarceration that will continue at least until Tyfani is 11 years old, the restrictions that will likely continue after his release due to his status as a registered sex offender, and the lack of any meaningful support as well as the potential danger he presents to a female child entering puberty at the time of his release from prison. Respondent and the AFC argue petitioner has no relationship with the child and will be unable to fulfill any meaningful aspect of parenting for many years. Petitioner father argues that even while incarcerated he can be a source of comfort and advice to Tyfani. He further contends his family, most particularly his mother, can assist with the efforts, such as transportation, that will be necessary to build and maintain a relationship with Tyfani.
Petitioner acknowledged he is currently incarcerated with the Department of Correctional Services pursuant to his conviction upon a plea for commission of a crime of rape in the third degree. The circumstances resulting in this conviction involved petitioner’s sexual intercourse with a girl, not the respondent herein, that was 14 years old. As part of the plea agreement, petitioner also pleaded guilty to possession of a weapon, a violent felony, and sexual abuse in the first degree relating to the respondent herein. Petitioner’s earliest release is 2020.
The testimony and arguments presented by respondent and AFC raise two issues, estoppel and forfeiture. The essence of estoppel is to bar a party from asserting a position inconsistent with prior statements or acts that were relied upon by another which results in either gain by the party against whom estoppel is asserted or detriment by the party seeking to invoke estoppel. Facts sufficient to establish the defense of estoppel were established. Petitioner seeks to assert a position, that he is Tyfani’s father, that is inconsistent with his prior statements or acts. Petitioner, at an appearance before the Support Magistrate, denied he was the father of Tyfani or acquiesced in the entry of a denial on his behalf. That action was subsequently dismissed on October 14, 2010. Respondent waited approximately six weeks before filing the current application. The cause of this delay was petitioner’s desire to avoid possible prosecution for the crime of rape in the third degree if he were to file a sworn document containing allegations that he had engaged in sexual intercourse with respondent. (See petitioner’s exhibits 7, 8, in evidence.) Absent evidence of any other intervening factor, *562 it is evident the duration of the delay in filing the within petition was determined by the plea agreement which limited petitioner’s criminal liability for his actions involving Ms. L. The reasoned or unexplained decision to refrain from acknowledgment of the parent-child relationship has been a factor in numerous decisions denying establishment of paternity. (Matter of Edward WW. v Diana XX., 79 AD3d 1181 [3d Dept 2010]; Matter of Willie W. v Magdalena D., 78 AD3d 958 [2d Dept 2010].) That petitioner’s refusal to act was of a relatively short duration is a factor in mitigation to be considered in the court’s inquiry into the child’s best interests, but it does not negate that petitioner placed his own interests ahead of the interests of the child while acting in a manner inconsistent with the current application. Petitioner testified to the support and benefits he can provide the child even when incarcerated and therefore cannot be heard to argue withholding those benefits, even for a short period, has no detrimental effect on the child.
Petitioner’s argument that estoppel was not appropriately pleaded is without merit. Indeed, the matter appeared before the court upon referral from the Support Magistrate because that issue was raised by respondent. Having failed to object to the transfer to this court any technical deficiency in the written pleading is deemed waived. While the only statutory reference to equitable estoppel is contained in Family Court Act § 532 relating to a request for genetic marker testing, the defense is well recognized outside of that limited issue and, therefore, that a genetic marker test was not sought does not preclude the defense. (Matter of Shondel J. v Mark D., 7 NY3d 320 [2006].) Proof of the necessary elements of estoppel does not bar petitioner’s application, rather requires an inquiry by the court as to the best interests of the child. (Matter of Tracy C. O. v Douglas A.E, 66 AD3d 1390 [4th Dept 2009].)
The second defense, though not specifically enunciated, is that of forfeiture. Petitioner engaged in criminal acts with respondent which resulted in Tyfani’s birth. The question presented is whether petitioner has, by those criminal acts, forfeited his right to establish paternity. It is well established a parent-child relationship in certain circumstances carries with it a constitutionally protected liberty interest. (Stanley v Illinois, 405 US 645, 655 [1972]; see also Caban v Mohammed, 441 US 380, 382 [1979]; Lehr v Robertson, 463 US 248, 267 [1983].) It is accepted that the parental rights of a man who impregnates a woman by means of forcible rape do not enjoy the status of *563 constitutionally protected liberty interest. That limitation has been expanded to include circumstances that involve what is referred to as rape in the third degree. The court noted in Peña v Mattox (84 F3d 894, 900 [7th Cir 1996]):
“[Statutory rape, even in its misdemeanor form, that is, even if not aggravated by an extreme disparity in ages or the extreme youth of one of the sexual partners, is not one of those crimes . . . that remain on the statute books, archaic and unenforced, as a residue of legislative inertia. . . . AIDS, abortion, and welfare have heightened public concern with teenage sex and pregnancy. . . . The conduct in which Ruben engaged with Amanda, and the sequel, her pregnancy, are conduct and consequence of which most societies, even today, strongly disapprove and for excellent reasons . . . The Constitution does not forbid the states to penalize the father’s illicit and harmful conduct by refusing to grant him parental rights.”
In discussing what parent-child relationships should be accorded constitutional protection, the Court, in Michael H. v Gerald D. (491 US 110 [1989]) went to great lengths to explain its decisions in Stanley (supra), Caban (supra) and Lehr (supra) required more than simple factors of biological fatherhood and some form of parental relationship. The Court wrote: “We think that distorts the rationale of those cases. As we view them, they rest not upon such isolated factors but upon the historic respect — indeed, sanctity would not be too strong a term— traditionally accorded to the relationships that develop within the unitary family.” (491 US at 123.) The footnote associated with this comment notes the “unitary family” is typified by the usual marital family but would also include unmarried parents and their children. However, going beyond those parameters goes beyond the traditionally respected relationships and, therefore, have no constitutional significance. (Gerald D., 491 US at 124 n 3.) In the case at bar, though technically within the category of “unmarried parents and their children,” the court finds petitioner’s parental rights do not rise to the level of a constitutionally protected liberty interest and may be denied if to do so is in the best interests of the child. That the relationship flows from petitioner’s illegal acts, he has never seen the child, his relationship with the child, until entering her teens, is limited to visitation days and letters, and petitioner is also precluded from any contact with the child’s mother, refutes any suggestion the relationship is one to be accorded historic respect.
*564 Though petitioner’s circumstances may not rise to the level of a protected liberty interest, he does have a protected due process right to be heard. (Matter of Craig V. v Mia W., 116 AD2d 130 [3d Dept 1986].) A determination of the best interests of the child is the standard to be applied to determination of either estoppel (Matter of Shondel J. v Mark D., 7 NY3d 320 [2006]) or forfeiture. (Matter of LaCroix v Deyo, 108 Misc 2d 382 [Fam Ct, Ulster County 1981].)
This court respectfully disagrees with the conclusion that petitioner’s conduct, the criminal offense giving rise to the birth of Tyfani, is to be considered only as it relates to the child’s best interests at the custody hearing. (Mia W., 116 AD2d at 132.) In its determination, the court agreed with the Deyo (supra) analysis that the legislature had established, as a matter of public policy, that a petitioner is not disqualified from, bringing a paternity proceeding based solely upon commission of the felony of rape in the third degree. The issue presented was whether a putative father has the due process right to pursue a paternity proceeding. The legislative action relied upon involved the issue of notice of certain proceedings relating to commitment of children to the care of the State. To relegate consideration of the best interests of the child to custody proceedings based upon a perception of public policy relating to a due process right of notice is an unwarranted extension of that policy.
Petitioner’s testimony establishes that he has had no contact with Tyfani and has provided no financial support. Petitioner testified he left “valuable property” at respondent’s residence when arrested and told respondent to sell it to support the child. Respondent denied any such communication. No evidence was presented describing the property or its value. Petitioner correctly points out that he has been precluded from any contact with respondent and the child by court order. He testified he believes he can be a financial and emotional resource for the child and that his mother may be able to help with transportation when he is permitted to visit with the child. He testified he is allowed visitation with his other child and his mother helps with transportation for those visits. Given the limited earning potential in prison, he acknowledged any financial support would be minimal. Any relationship with Tyfani will be severely restricted by petitioner’s incarceration. Petitioner’s current placement is approximately five hours from the child’s residence further limiting potential contact. The court does not consider the relationship between petitioner and respondent *565 and the resulting pregnancy to be a wrongful, yet understandable consequence of actions carried too far by immature teens in an exclusive relationship. At or about the time respondent became pregnant by petitioner, he was also engaging in sexual intercourse with another 14-year-old girl. In addition, he had already impregnated a third woman still in her teen years. While petitioner’s exhibit 5 shows respondent considered herself in love with petitioner and dedicated to him alone, there is no credible evidence those feelings were reciprocated. Given petitioner’s attraction to young girls and lack of internal boundaries, the court cannot ignore that petitioner’s possible release from prison will occur when Tyfani will be approximately 12 years old. Petitioner will be a registered sex offender whose contact with teenage girls will be highly restricted if not precluded in its entirety. While petitioner’s application is presented in context of the benefits he can bestow upon the child, the court questions the sincerity of those representations as he chose to withhold those benefits, by not pursuing paternity, when it was in his own interest to wait.
 A grant of paternity provides petitioner with the ability to block any potential Tyfani has for a stable relationship with an appropriate father figure. No such person exists in her life at this moment. However, respondent, her mother, is hardly more than a child and certainly the possibility of her forming a lasting relationship with a person that can provide Tyfani with an appropriate parent figure is worthy of consideration. Respondent and Tyfani continue to reside in a foster home as a result of neglect petitions brought against respondent’s father. It is clear Tyfani’s best interests are served by allowing respondent to learn of what a parent-child relationship consists and for them to begin to build that relationship without the interference of petitioner. The petition herein is dismissed as the relief sought is contrary to the best interests of the child.