IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 6, 2011 Session

**LINDSI ALLISON CONNORS v. JEREMY PHILLIP LAWSON**

**Appeal from the Circuit Court for Bradley County**
**No. V-06-126     Lawrence H. Puckett, Judge**

_____

**No. E2011-00757-COA-R3-CV-FILED-MAY 16, 2012**

_____

In this appeal, the biological father sought to revise the permanent parenting plan to be named the child's primary residential parent. The child had been conceived during illegal sexual contact meeting this State's definition of statutory rape; the mother, however, allowed the father to have a relationship with the child. Upon remand after an earlier appeal by the father, the trial court determined that the mother, now married and living in Florida with the child, was in contempt for failing to cooperate with the father regarding certain co-parenting issues. Despite this finding, the court refrained from imposing any punishment on the mother. The court additionally denied the father's request to modify custody, made a modest award of attorney's fees to the father, and held that further proceedings relating to the child be conducted in Florida. The father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Jeremy Phillip Lawson.

Lindsi Allison Connors, Jacksonville, Florida, pro se appellee.

**OPINION**

**I. BACKGROUND**

The daughter ("the Child") at issue was conceived while Lindsi Allison Connors ("Mother") was working under Jeremy Phillip Lawson ("Father") at a pizza establishment.

Mother had just turned 17 years old and Father was 23 years of age when the Child was born on July 12, 2002.

In February 2006, Father filed an initial petition to establish parentage regarding the Child.[1] At that time, Father asserted that he should be named the primary residential parent of the Child due to what he alleged were Mother's difficulties with mental problems, substance abuse, and anger management issues. Subsequently, an order was entered by the court requiring a DNA test and reciprocal drug screenings on the part of the parties. Both Mother and Father filed negative drug screens with the court. A DNA test confirmed Father was indeed the biological father of the Child.

On July 20, 2006, the trial court conducted a hearing and entered an order of parentage. A permanent parenting plan ("Plan") submitted by Mother was approved as modified by the court to provide additional co-parenting time to Father.[2] Mother was named the primary residential parent and awarded 236 days of co-parenting time, with Father receiving the remaining 129 days. No special restrictions were placed on Father's visitation with the Child. The court required Mother to continue living with her mother; she was advised that if she moved out-of-state, she would need to seek modification of Plan.

Nearly a year later, in June 2007, Father filed an emergency petition to prevent Mother from removing the Child out-of-state and for modification of Plan.[3] Father alleged in his petition that Mother had gone to Florida on a vacation with the Child; when she returned from the trip, Mother announced that she had met a man and married him while there. Additionally, Mother advised Father that she was relocating to Florida with the Child. In his petition, Father averred that Mother is emotionally unstable, unable to maintain consistent employment, and had failed to follow the terms of Tennessee Code Annotated section 36-6-108 relating to parental relocation. An ex-parte order was entered by another trial judge that gave Father emergency temporary custody of the Child until a hearing could be conducted.

After proceedings on July 5, 2007, the trial court rescinded the previous Plan and substituted another one ("Plan II"). In Plan II, the court allowed Mother to relocate to

_____

[1]The answer filed by Mother to Father's original paternity petition indicates that Mother and Father lived together until their separation.

[2]Mother, with counsel, agreed to multiple parenting orders that provided Father with substantial and unrestricted contact with the Child.

[3]It appears that Mother's animosity for Father increased when he sought to stop her move to Florida with the Child.

Florida with the Child and awarded her 280 days of co-parenting time. Because Mother was not working, the court imputed income to her of $5.85 per hour for a 40-hour week. Pursuant to Plan II, Father received 85 days of co-parenting time.

A year later, in July 2008, Mother filed a pro se emergency petition alleging that Father did not allow her to have the Child on July 4 and 5 for her holiday year and birthday pursuant to Plan II. She further related that Father was residing with a pregnant girlfriend and was exercising less than his allotted co-parenting time. According to Mother, Father informed her that he was not returning the Child to her in order to make up for some of the visitation he had missed. Additionally, Mother claimed Father was behind on his child support payments.

At the conclusion of a hearing on September 5, 2008, the court modified Plan II ("Plan III"). Co-parenting time was divided 300 days to Mother and 65 days to Father. Father also was awarded one-half of each summer beginning the first weekend following the end of school; he further received one week at Christmas and either the Spring or Fall Break. Father was allotted additional co-parenting time whenever he was able to travel to Florida. Father's child support obligation was adjusted; no income was imputed to Mother from the time of the hearing until September 1, 2009, at which time income would again be imputed at the standard amount (or Mother could supply proof of her income) and support recalculated.

In March 2009, Father filed a petition for contempt and for modification of Plan III. According to Father, Mother had traveled to Tennessee for a visit with her family but had failed to provide any notice to him and had made no effort to allow him to visit with the Child during her stay. Father also claimed that Mother had been verbally and mentally abusive to the Child and had engaged in inappropriate conversations regarding him with the Child. Father requested that (1) Plan III be modified to name him the primary residential parent, (2) Mother be required to appear and show cause why she should not be held in contempt, and (3) he be awarded attorney's fees and other costs associated with bringing the action. Father admitted in his petition that he had a child support arrearage.

Mother failed to answer, and a motion for default judgment was filed by Father. Mother subsequently filed a document styled as an answer that stated she would not appear in court. After a hearing was held on July 13, 2009, and Mother did not appear, the trial court granted the default judgment and relief requested by Father.

That same day, Mother contacted the court and was allowed to participate in a telephone conference. Upon Mother advising the court that she was not contesting jurisdiction and promising to comply with the court's orders, the default judgment was

rescinded. The court ordered that Father receive co-parenting time from July 25, 2009, until the weekend before the start of school. Mother was admonished to refrain from interfering with Father's telephone contact with the Child.

Subsequently, despite having advised the court that she was not contesting jurisdiction, Mother requested that the Tennessee court relinquish jurisdiction to Florida. At the conclusion of a hearing on February 26, 2010, the trial court issued an order finding Mother in contempt of the court's prior orders. Specifically, the court found that Mother had failed to provide Father's summer co-parenting time, failed to provide Father's co-parenting time when she made trips to Tennessee, interfered with reasonable telephone contact between Father and the Child, and made derogatory comments to the Child about Father. The court however declined to impose any punishment on Mother and did not award Father any attorney's fees. The petition to modify custody was orally denied from the bench. The court concluded that it would be impossible to exercise jurisdiction over this matter and ordered that further proceedings be filed in Florida.

After Father appealed, we reversed the decision of the trial court and remanded the case for further proceedings. We observed in our prior opinion as follows:

> The final judgment entered by the Trial Court . . . makes no mention whatsoever of whether Father had proven a material change in circumstances. We acknowledge that following the hearing, the Trial Court did state that it was "going to deny the motion to modify" and then immediately proceeded to relinquish jurisdiction in this case. This is insufficient to resolve the custody issue when no mention is made of this issue in the final judgment. In *Elmore v. Elmore*, 173 S.W.3d 447 (Tenn. Ct. App. 2004), this Court stated that:
>
> > It is a long-recognized rule that "a Court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. App. 1979) (internal quotations and brackets omitted).
>
> *Elmore*, 173 S.W.3d at 449, 450.
>
> Because the Trial Court did not reference in its final judgment whether Father had established what was necessary to change custody and designate him as primary residential parent, we vacate the Trial Court's judgment. This cause is remanded to the Trial Court for a determination as to whether Father had

proven a material change in circumstances and, if so, whether designating Father as the primary residential parent is in the Child's best interest.

*Connors v. Lawson*, No. E2010-00791-COA-R3-CV, 2010 WL 4953496, at *4 (Tenn. Ct. App. Dec. 6, 2010).

The trial court subsequently issued a memorandum decision, setting out the following findings from prior hearings, the first one conducted on July 20, 2006:

[T]he court found Ms. Connors is very honest in admitting that, within the past month, she had smoked a joint of marijuana although her drug test for THC was reported negative and the court would not otherwise have known her use of marijuana. **The court also credited Mother's testimony that Mr. Lawson got her pregnant at age sixteen (16) and later got another girl, a fifteen (15) year old, pregnant at Domino's Pizza where he worked as a supervisor and that he had been fired for it. Father had been Mother's supervisor at a local Domino's Pizza when he led her astray introducing her to marijuana and underage use of alcohol. She testified that Father was in the regular habit of providing a place for underage people to congregate to engage in illegal drug use and underage consumption of alcohol.** The court made these findings at the time of the July 20, 2006 hearing but they are not included in the court's February 14, 2007 order. The court makes the following pertinent observations from the record.

Based upon a normal nine month gestational period, the Child of the parties was conceived around November 12, 2001. Mother was (07/05/85 - 10/12/01) approximately sixteen (16) years three (3) months and seven (7) days old when the Child was conceived. Father was (2/25/79 - 10/12/01) twenty-two years (22) seven and a half (7 ½) months old. **These facts are corroborative evidence that the Child was the product of Father's Statutory Rape and Rape of Mother by an Authority Figure. The exact difference in ages between Father and Mother is six years (6) four months (4) and ten (10) days no matter the exact date of their Child's conception.**

Along with proof of Mother's calendar age, the court also found that . . . [M]other was emotionally fragile, vulnerable, and immature at the time of the hearing but she is not unstable or suffering from mental problems as alleged by Father. Out of an abundance of caution, as is the court's usual practice with illegal drug use by a parent, the court ordered Mother to submit to another drug screen and to remain living with her mother pending those results. The

-5-

maternal grandmother of the Child . . . testified that . . . her house rules forbade visitors and any use of alcohol and/or drugs. She testified that . . . [Mother] . . . is an excellent student. The court was satisfied that Mother's living at the home of [her mother] would ensure that Mother would no longer engage in the use of marijuana or other illicit activity.

The court credited all the above testimony and so found at the July 20, 2006 hearing although these findings were not made a part of the court's February 14, 2007 [order] or of any order of the court until now.

* * *

On July 5, 2007 the court heard the parties on the emergency petition. Attorney M. Susie Starnes represented Father. The Mother appeared pro se.

**Apparently, Father became upset with the trial court's query of attorney Starnes as to whether she "knew about her client" and his conduct with the underage Mother of the Child. He would later claim that the Judge said he was on the judge's "bad list" but the trial judge has no such list and did not say this. The court did ask Father rhetorically "Why aren't you in jail?"**

**These queries express the court's concern about Father's "Statutory Rape" of Mother as defined in T.C.A. 39-13-506(b)(2)[.] "The victim (Mother) is at least fifteen (15) but less than eighteen (18) years old and the defendant (Father) is [more than] five (5) but less than ten (10) years older than the victim."**

**From the evidence before it, the court also concluded that the circumstances of the Child's conception i.e. while Mother was working under Father's supervision at Domino's Pizza, constituted "Statutory Rape by an Authority Figure" (T.C.A. 39-13-532) and "Sexual Battery by an Authority Figure" (T.C.A. 39-13-527). Both "Statutory Rape by an Authority Figure" under § 39-13-532 and Sexual Battery by an Authority Figure under § 39-13-527 today are defined as "predatory offenses" under T.C.A. 39-15-523 setting out special "punishment for certain Child sexual predators."**

**Father has never been charged with these criminal offenses. Without indictment and conviction for violating the above statutes Father could**

**not be classified as a "Child sexual predator."**

The statute of limitations on the . . . felonies of statutory rape and rape or battery by an authority figure, at the time of the offense in 2001, was four (4) years from the commission of the offense or within four (4) years from the date the Child (Mother) attains the age of majority whichever is greater. In the case of Father and Mother here, the statute of limitations ran July 5, 2007.

The court notes that, instead of seeking the prosecution of Father for his crimes against her, Mother agreed to allow him shared parenting time.

The court set aside the previous order requiring Mother to reside with her mother in Tennessee and allowed Mother to move to Florida "to further her education and due to her recent marriage." The court sanctioned Mother's move and also found the Child's move with the Mother to be in the Child's best interest. The move was not motivated by Mother to defeat Father's shared parenting time. To make up for Father's missed time with the Child occasioned by Mother's precipitous move to Florida, the court granted Father equal time with his Child on alternate two week intervals until the Child started school which was anticipated to being later that summer.

\* \* \*

On September 5, 2008 the court held another hearing in this matter at which time Mother was unable to drive because she or her mother one was suffering from medical issues arising from a "pseudo tumor." The court noted that Mother was in school attempting to better her circumstances. The court made the following note: that Father's time with the Child would be one half of summer vacation, a week at Christmas and the Child's fall and spring break from school and "Father's shared parenting time - supervised." This court did not order Father's time to be supervised to the best of the court's recollection but this issue must have arisen during the hearing for the court to have noted it.

\* \* \*

**Findings of the court not included in this order are those mentioned already and also that Mother's work and family stability was very much improved at the time of this hearing but that the court had new concerns regarding Father's work stability and circumstances as alleged in the**

**Mother's petition, in particular, that Father was not paying his Child support as previously ordered and that Father was now residing with his pregnant girlfriend.**

As already acknowledged, this judge realizes that the mandate and opinion of the Court of Appeals requires the court to determine whether *Father had proven a material change in circumstances and, if so, whether designating Father as the primary residential parent is in the Child's best interest.*

Under the mandate, the court cannot rely on any post February 26, 2010 facts and does not do so.

* * *

On November 19, 2009, the court and the judge of the Florida court held a joint hearing by phone with the parties and counsel. This court asked to retain jurisdiction of the case until Father's petition for contempt of March 17, 2009 could be ruled upon by the court. (Taking the view that the Tennessee judge could and should enforce his order instead of the Florida court doing so but that, thereafter, jurisdiction ought to be relinquished to the Florida court to decide Mother's Petition to Modify). The court believed Tennessee to be a non-convenient forum for Mother's modification petition because evidence regarding the minor Child's current living environment and witnesses w[as] in Florida not Tennessee. Also, a Florida guardian ad litem for the Child was more workable than appointment of a Tennessee guardian ad litem could be. The Tennessee court was the most convenient forum to try the contempt allegations since they allegedly occurred in Tennessee.

* * *

FEBRUARY 26, 2010 HEARING

The March 29, 2010 order from the court's February 26, 2010 hearing has been vacated by the Court of Appeals. . . . In this hearing the court heard all the evidence on Father's March 17, 2009 petition to modify the permanent parenting plan to make him primary residential parent instead of Mother.

* * *

**Mother's lapses in providing Father access to his Child were not frequent.**

They have not affected the Child's well-being in a meaningful way.

Father is insensitive to his own part in the parties' difficulties, focusing only on the Mother's which the court finds to be minor in comparison to the contribution resulting from Father's character defects.

Mother has willingly afforded Father time with the parties' Child throughout these proceedings except for a very few instances. On balance, Mother's conduct has exhibited her willingness to foster a relationship between the Father and his daughter rather than restrict or impede it.

The court finds Mother to have been truthful and honest with the court. She has admitted her failings. She has not abused medication since she came before this court although the court initially found she should live with her mother out of concern that she not smoke marijuana or engage in any other illegal drug use – conduct for which Father bears some responsibility. Mother's earlier emotional subjection to Father, the court believes, probably stems from her victimization by him at age sixteen (16) which more likely than not is a major factor in Mother's resistance to Father's drive to expand his role in their daughter's life now. Her awareness and attention to Father's past misconduct is viewed by this court as probably more healthful than harmful to her and the Child. Father's sexual abuse is not condoned by the public policy of Tennessee or this court. As the Mother and Child matured, it is a foreseeable consequence that each could be expected to view Father's victimization of Mother as a sixteen year old and Father's sexual misconduct with a fifteen year old as more and more adversely reflecting upon Father's character and his trustworthiness. Father's lack of respect for (care and concern for the welfare of) Mother and other underage girls in the past certainly affects his parental fitness in the eyes of this court.

Care must be taken to protect the Child from any insinuation that Father's attitude and conduct toward young girls is proper or is condoned. [The Child] . . . is just a few short years away from the age of the females Father has victimized in the past. At the very least, Father must provide the court some evidence of his remorse for and/or rehabilitation from his past sexual misconduct. Unfortunately, he has failed to do so.

Here, the court draws a distinction between Father's parental responsibility (which he certainly retains) and his parental fitness which he is lacking in this regard.

This court acknowledges that Father's illegal sexual contact with Mother does not forfeit his right to establish paternity (In the matter of Craig v. Mia W., 116 A.D.2d 130; 500 N.Y.S. 568; 1986 N.Y. App. Div. LEXIS 50371). "The father of an illegitimate Child has constitutional due process rights which must be recognized." (Matter of LaCroix v. Deyo 108 Misc 2d 382, p. 391, citing Stanley v. Illinois, 405 U.S. 645). This is certainly true when "the intent of the Father is so that he may assume the duties and responsibilities of supporting the Child." Id. See, State v. ex rel Campbell v. Conley, 2006 Tenn. App. LEXIS 342.

But this court agrees with the observation of the New York court that the illegal sexual contact that led to the conception of the Child is to be considered by this court "as it relates to the Child's best interest at the custody hearing." Craig v. Mia W., supra, 116 A.D.[2d] at 132. The fact of Father's abuse of another 15 year old exacerbates the court's concerns about his character deficiencies and untrustworthiness as a care giver for the Child.

**The court finds that the failure of Mother to abide by the parties' parenting plan and the instances in which she has been found to be in contempt of the court's orders taken together do not display a fixed pattern or an attitude designed to prevent Father from having a meaningful relationship with his daughter. In light of this court's ongoing concerns about Father's character and sexual misdeeds, the Mother ought not be prevented from protecting the Child from exposure to Father's improper conduct. But she must abide by the clear mandates of the court's shared parenting order.**

The court will now address the law applicable to Father's Petition for Modification.

* * *

**Father has failed to prove any of his alleged grounds for modification (including those upon which the court based its finding of contempt against Mother) have affected the Child's well-being.**

-10-

**The fact that the parties have a strained relationship and cannot get along with one another absent a showing of a "meaningful affect upon the Child" does not constitute a material change of circumstances warranting modification. Stuphin v. Stuphin, 2006 Tenn. App. LEXIS 14 at p. 7.**

\* \* \*

. . . Father's illegal sexual contact with Mother "is to be considered as it relates to the Child's best interest at the custody hearing." In re: Craig v. Mia, supra.

Our State Legislature has spoken on this issue as follows:

T.C.A. 36-6-406. Restrictions in temporary or permanent parenting plans.

(a) The permanent parenting plan . . . and a parent's residential time as provided in the permanent parenting plan or temporary parenting plan shall be limited if it is determined by the court, based upon [a prior order or other] reliable evidence, that a parent has engaged in any of the following conduct:

(1) . . .

(2) . . . [S]exual abuse or a pattern of emotional abuse of the parent . . . as defined in § 36-3-601.

\* \* \*

T.C.A. 36-3-601 Part Definitions.

(1) . . .

(10) "Sexual assault victim" means any person, regardless of the relationship with the perpetrator, who has been subjected to, threatened with, or placed in fear of any form of rape, as defined in . . . § 39-13-506 [statutory rape] . . . or sexual battery as defined in . . . 39-13-527 [sexual battery by an authority figure]

"It is also the public policy of this State that adults not engage in sexual intercourse, consensual or otherwise, with minors who are four or more years younger than the adult (T.C.A. 36-13-506). "We accept as true the

prosecutor's conclusion that statutory rape is 'offensive to the public.'" <u>State ex rel Campbell v. Conley</u>, 2006 Tenn. App. LEXIS 342, p. p. 9-10.

It is clearly the legislature's intent, based upon the finding of this court from clear and convincing reliable evidence that Father perpetrated statutory rape and rape by an authority figure upon Mother, that Father's time ought to be *limited* with his Child rather than expanded to make him primary residential parent.

* * *

[Mother] has been vocal about Father's sexual abuse from the outset of this case. This court does not know whether she was aware of her right to request Father's time with the Child be limited under [Tennessee Code Annotated section 36-6-406. Restrictions in temporary or permanent parenting plans] . . . .

* * *

From clear and convincing evidence before it, the court finds Father to be a repeat offender of this public policy based upon clear and convincing evidence that he was fired from his job around the year 2006 for having sex in the manager's office with a fifteen (15) year old working under his supervision.

Further, Father's poor character and abusive conduct under T.C.A. 36-6-106 (a)(8) and T.C.A. 36-6-404(b)(12) are evidence of physical and emotional abuse to the other parent from which the Father remains un-rehabilitated.

Moreover, Mother, throughout the Child's life, has been the Child's primary care giver and continuity of placement favors maintaining the current shared parenting arrangement.

The court finds none of the statutory factors found in 36-6-106(a) (1) through (1) and 36-6-404 (b)(1) through (16) favor Father over the Mother as primary residential parent or from the record considered as a whole, support modification of the plan to give Father more shared parenting time.

(Bold emphasis added). The court awarded $1,000 in attorney's fees for Father. Father has again filed a timely notice of appeal.

-12-

## II. ISSUES

Father raises the following issues on appeal:

1. Whether the trial court erred by failing to find that the evidence established a significant change in circumstances since the entry of the last custody order.

2. Whether the trial court erred by not finding that a modification of custody was in the best interest of the Child.

3. Whether the trial court erred in awarding Father an attorney's fee of $1,000 without conducting a hearing on the amount of a reasonable fee.

## III. STANDARD OF REVIEW

The factual findings of the trial court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure de novo standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

## IV. DISCUSSION

"A custody decision, once final, is res judicata upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Young v. Smith*, 246 S.W.2d 93, 95 (Tenn. 1952)). However, because the circumstances of children and parents change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Scofield*, 2007 WL 624351, at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)).

Modification of an existing custody or visitation arrangement involves a two-step analysis. Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C). "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." *Cosner v. Cosner*, No. E2007-02031-COA-R3-CV, 2008 WL 3892024,

at *4 (Tenn. Ct. App. Aug. 22, 2008)(citing *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)). However, to determine whether a material change in circumstances has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered; and (3) the change is one that affects the child's well-being in a meaningful way." *Cosner*, 2008 WL 3892024, at *4 (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)).

## Material Change in Circumstances

The determination of whether a "material change of circumstances" has occurred requires a different standard depending upon whether a parent is seeking to modify custody (i.e., change the primary residential parent) or modify the residential parenting schedule. Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C). "[A] 'change in circumstance' with regard to the parenting schedule is a distinct concept from a 'change in circumstance' with regard to the identity of the primary residential parent." *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Subsection (a)(2)(C) establishes a lower threshold for modification of a residential parenting schedule. *Scofield*, 2007 WL 624351, at *3.

In pertinent part, Tennessee Code Annotated section 36-6-101(a)(2)(B)-(C) provides:

(B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

* * *

(C) If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of

-14-

the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C) (2010).

As indicated above, after the prior appeal by Father, we concluded that the trial court had not properly addressed all of the issues before it. Accordingly, we vacated the judgment and remanded the case back to the trial court "to determine whether Father has proven a material change in circumstances and, if so, whether it is in the Child's best interest to designate Father as primary residential parent . . . ." *Connors*, 2010 WL 4953496, at *5.

The proof established by Father reveals Mother had engaged in activities in violation of Plan III. Specifically, these violations included: (1) Mother failed to allow Father to engage in one half of the summer co-parenting time; (2) Mother failed to notify Father that she had traveled from Florida to Tennessee so that he could exercise meaningful contact with the Child; (3) Mother interfered with reasonable telephone contact between Father and the Child; and (4) Mother made derogatory comments about Father in the presence of the Child during telephone communications. The trial court found Mother in contempt for each of these reasons.

As to the issues Father raised concerning her mental health, Mother testified as follows:

Q. Do you have a diagnosis of being bipolar?

A. He said that he's seeing me and treating me with medicine because of my ups and downs, so bipolar is defined by being ups and downs. No, I've never had a formal diagnosis.

Q. Is that the psychiatrist that you referred to?

A. Yes. He said that he is treating me with some medicine that stabilizes your mood. It does not say anything for bipolar.

Q. How often do you see the psychiatrist?

A. Almost every three months . . . .

The record reveals Mother has had extensive problems with her back and is on narcotic pain medication.

Father additionally presented evidence that the Child was not doing well academically in a number of areas, does not follow directions well, was unsatisfactory at listening and working well with others, and was reading below grade level. Mother attributed these issues to the Child's purported ADHD condition.

The trial court determined on remand that Father had not established a material change of circumstances had occurred, making the following findings: Mother "is not unstable or suffering from mental problems"; Mother's move to Florida was not motivated to defeat Father's shared parenting time; "the failure of Mother to abide by the parties' parenting plan and the instances in which she has been found to be in contempt of the court's orders taken together do not display a fixed pattern or an attitude designed to prevent Father from having a meaningful relationship with his daughter"; "Mother's lapses in providing Father access to his Child were not frequent . . . [and] . . . have not affected the Child's well-being in a meaningful way"; "Father is insensitive to his own part in the parties' difficulties, focusing only on the Mother's which the court finds to be minor in comparison to . . . Father's character defects"; "Mother has willingly afforded Father time with the parties' child . . . except for a very few instances . . . [and] . . . has exhibited her willingness to foster a relationship between the father and his daughter rather than restrict or impede it"; and "[t]he fact that the parties have a strained relationship and cannot get along with one another absent a showing of a 'meaningful affect upon the Child' does not constitute a material change of circumstances warranting modification." Nevertheless, the court went further and addressed the best interest of the Child at issue in this case.

## Best Interest

A best interest determination requires consideration of a number of factors, including those set forth at Tennessee Code Annotated section 36-6-106(a) to make an initial custody determination, and those set forth at Tennessee Code Annotated section 36-6-404(b) to fashion a residential schedule. *Id.* As this appeal raised the issue whether a change in custody is in the best interest of the Child, at this point we will consider the factors as set forth in Tennessee Code Annotated section 36-6-106(a):

1. The love, affection and emotional ties existing between the parents or caregivers and the child;

2. The disposition of the parents or caregivers to provide the child with food,

-16-

clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

3. The importance of continuity in the child's life and the length of time the child lived in a stable, satisfactory environment; . . .

4. The stability of the family unit of the parents or caregivers;

5. The mental and physical health of the parents or caregivers;

6. The home, school and community record of the child;

7. The reasonable preference of the child, if twelve (12) years of age or older; . . . The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

8. Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

9. The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child;

10. Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a)(1) - (10) (2010).


## Past Sexual Misconduct of Father

The trial court in this matter determined Father's illegal sexual contact that led to the conception of the Child should be considered in the best interest analysis. The court relied upon our statements in *Campbell v. Conley*, No. W2005-01842-COA-R3-JV, 2006 WL 1440317, at *3 (Tenn. Ct. App. May 25, 2006), for the proposition that "[i]t is . . . the public policy of this State that adults will not engage in sexual intercourse, consensual or otherwise, with minors who are four or more years younger than the adult." *See* Tenn. Code Ann. § 39-

13-506.[4]  Father contends that the trial court unfairly relied on his past conduct.

The United States Supreme Court has indicated that "'[p]arental rights do not spring full-blown from the biological connection between parent and child.  They require relationships more endearing.'" *Lehr v. Robertson*, 463 U.S. 248, 260, 103 S.Ct. 2985, 2992, 77 L.Ed. 2d 614 (1983) (quoting with approval Justice Stewart's dissent in *Caban v. Mohammed*, 441 U.S. 380, 397, 99 S.Ct. 1760, 1770, 60 L.Ed. 2d 297 (1979)).  Regarding parenthood resulting from statutory rape, the New York appellate court in *Craig V. v. Mia W.*, 116 A.D.2d 130, 500 N.Y.S.2d 568 (1986) held that "[t]he commission of the crime of statutory rape does not preclude [biological father's] right to maintain the paternity and custody proceedings.  That conduct is to be considered only as it relates to the child's best interest at the custody hearing." *Id.*, 116 A.D.2d at 132, 500 N.Y.S.2d at 570.  That case, however, is distinguishable from the instant one in that it was decided on the basis of the provisions of the specific statute involved, not as a matter of constitutional law.  In the case of *LaCroix v. Deyo*, 108 Misc. 2d 382, 437 N.Y.S. 2d 517 (1981), another New York case where the ages of the father and the mother at the child's conception were 19 and 15, respectively, the court observed  that "in the field of custody, 'amorality, immorality, sexual deviation and what we conveniently consider aberrant sexual practices do not ipso facto constitute unfitness for custody.'" *Id.* at 390, 437 N.Y.S.2d at 522.

In *Pena v. Mattox*, 84 F.3d 894 (7th Cir. 1996), the federal circuit court noted that

[i]t is not the brute biological fact of parentage, but the existence of an actual or potential relationship that society recognizes as worthy of respect and protection, that activates the constitutional claim.

\* \* \*

. . . [N]o court has gone so far as to hold that the mere fact of fatherhood, consequent upon a criminal act that our society does take seriously and that is not cemented (whoever's fault that is) by association with the child, creates an interest that the Constitution protects in the name of liberty. . . .

. . . The sexual act was consensual, [the father] was 19 rather than 40, and [the mother] was 15 rather than 12. . . .  But statutory rape, even in its misdemeanor form, that is, even if not aggravated by an extreme disparity in ages or the

---

[4]The *Campbell* case makes clear that consent is not a defense and ignorance of the minority of the victim is not required.  2006 WL 1440317, at *3.

extreme youth of one of the sexual partners, is not one of those crimes . . . that remain on the statute books, archaic and unenforced, as a result of legislative inertia . . . . AIDS, abortion and welfare have heightened concern with teenage sex and pregnancy. In most states of the United States sex with a 15-year-old is a crime and is likely (somewhat, not highly, likely) to be prosecuted if a complaint is filed. . . . A pregnancy is a serious misfortune for a 15-year-old. The Constitution does not forbid the states to penalize the father's illicit and harmful conduct by refusing to grant him parental rights . . . ."

84 F.3d at 899 - 900.

In a more recent case, *Phillip E. K., Jr. v. Sky M. L.*, 34 Misc. 3d 559, 936 N.Y.S.2d 859 (Fam. Ct. N.Y.,Nov. 14, 2011), involving a 19-year-old father and 14-year-old mother, yet another New York court noted as follows:

It is well established a parent-child relationship in certain circumstances carries with it a constitutionally protected liberty interest. *Stanley v. Illinois*, 405 U.S. 645, 655, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). *See also Caban v. Mohammed*, 441 U.S. 380, 382, 99 S.Ct. 1760, 60 L.Ed. 2d 297 (1979) and *Lehr v. Robertson*, 463 U.S. 248, 267, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). It is accepted that the parental rights of a man who impregnates a woman by means of forcible rape does not enjoy the status of constitutionally protected liberty interest. That limitation has been expanded to include circumstances that involve what is referred to as Rape in the third degree. . . .

\* \* \*

In the case at bar, though technically within the category of "unmarried parents and their children," the Court finds Petitioner's parental rights do not rise to the level of a constitutionally protected liberty interest and may be denied if to do so is in the best interests of the child. . . .

Though Petitioner's circumstances may not rise to the level of a protected liberty interest, he does have a protected due process right to be heard. *Craig V. v. Mia W.*, 116 A.D. 2d 130, 500 N.Y.S.2d 568 (3rd Dept., 1986). . . .

This Court respectfully disagrees with the conclusion that Petitioner's conduct, the criminal offense giving rise to the birth of [the child], is to be considered only as it relates to the child's best interest at the custody hearing. *Mia W., supra* at p. 132, 500 N.Y.S. 2d 568. In its determination, the Court agreed

with the *Deyo, supra* analysis that the legislature had established, as a matter of public policy, that a petitioner is not disqualified from bringing a paternity proceeding based solely upon commission of the felony of Rape in the third degree. . . . To relegate consideration of the best interest of the child to custody proceedings based upon a perception of public policy relating to a due process right of notice is an unwarranted extension of that policy.

. . . The Court does not consider the relationship between Petitioner and Respondent and the resulting pregnancy to be a wrongful, yet understandable consequence of actions carried too far by immature teens in an exclusive relationship. At or about the time Respondent became pregnant by Petitioner, he was also engaging in sexual intercourse with another fourteen year old girl. In addition, he had already impregnated a third woman still in her teen years. . . . Given Petitioner's attraction to young girls and lack of internal boundaries [the child's age, among other things, required the father's claim be denied].

*Id.* at 562-566, 936 N.Y.S.2d at 863-65.

In the matter before us, the trial court found as follows: "Father [is] a repeat offender of this [State's] public policy based upon clear and convincing evidence that he was fired from his job around the year 2006 for having sex in the manager's office with a fifteen (15) year old working under his supervision" and "Father's poor character and abusive conduct under T.C.A. 36-6-106 (a)(8) and T.C.A. 36-6-404(b)(12) are evidence of physical and emotional abuse to the other parent [Mother] from which the Father remains un-rehabilitated." The court determined that Father's time with the Child should be limited rather than expanded.

In addition to the public policy holding, the trial court specifically relied upon Tennessee Code Annotated section 36-6-406 to hold that "[t]he permanent parenting plan . . . and a parent's residential time as provided in the permanent parenting plan . . . shall be limited if it is determined by the court, based upon . . . reliable evidence, that a parent has engaged in . . . (2) . . . sexual abuse or a pattern of emotional abuse of the parent . . . as defined in § 36-3-601 . . . ." Subsection (10) of Tennessee Code Annotated section 36-3-601 defines a "Sexual Assault victim" . . . [as one] who has been subjected to, threatened with, or placed in fear of any form of rape, as defined in . . . §39-13-506 [statutory rape] . . . or sexual battery as defined in . . . §39-3-527 [sexual battery by an authority figure]." The trial court found the provision applicable in this case and denied Father's request to make him the primary residential parent.

The court further observed that Mother, throughout the Child's life, has been the

primary care giver and continuity of placement favors maintaining the current shared parenting arrangement. It was concluded by the court that none of the statutory factors found in Tennessee Code Annotated sections 36-6-106(a)(1) through (10) and 36-6-404 (b)(1) through (16) favored Father over the Mother as primary residential parent or from the record considered as a whole, supported modification of the plan to give Father more shared parenting time.

Father argues the trial court's assertion that Father is not an appropriate custodian for the Child is in direct contradiction to the court's previous orders. He contends that on at least three prior occasions where he had been before the court, no restrictions or limitations on his ability to serve as an unsupervised custodian had been identified. Father stresses that not once did the trial court express concern about him and no written findings of abuse were entered. Father argues that the earlier custody and visitation determinations are res judicata with respect to the facts as they existed when the court was either making its decision or approving the orders submitted to the court. *See Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001).

Restatement (Second) of *Judgments*, section 27, requires that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *See* Restatement (Second) of Judgments § 27 (1982). Upon our review of the record, we find that while the circumstances of the Child's conception were clearly known to the trial court and the parties, the present issue relating to Father's past misconduct relative to him being named primary residential parent was never properly raised and explored in the context of the best interest of the Child. Thus, we find the issue was not actually litigated and estoppel does not bar its consideration.

Father submits that the trial court based its entire decision on its interpretation of factor (8) of Tennessee Code Annotated section 36-6-106(a) and ignored all of the other applicable factors. He argues that factors (3), (5), (6) and (10) favor custody being transferred to him. Father contends that the evidence established that the Child has no established sense of continuity in the care of Mother, in view of the fact that Mother had married a man she had known for only a few weeks and then uprooted the Child from familiar surroundings and moved to Florida. *See* Tenn. Code Ann. § 36-6-106(a)(3). Father notes that Mother has a demonstrated history of significant physical and emotional issues that bring her ability to parent into question. He also stresses that Mother has dropped out of school and has not worked in a substantial period of time. In contrast, Father asserts that he has no physical or emotional issues that affected his ability to either work or parent the Child. *See* Tenn. Code Ann. § 36-6-106(a)(5). Further, Father contends that the fact the Child was

not thriving academically in the primary custody of Mother supports placement with him. *See* Tenn. Code Ann. § 36-6-106(a)(6). Father additionally contends that Mother has a demonstrated history of not supporting a healthy relationship between him and the Child, and she has no hesitation in expressing her hatred for Father. In contrast, Father claims that he has become more mature and responsible. He claims to understand Mother's animosity toward him arises from the fact of her pregnancy at a young age; he testified that he would work to assure that the Child had a healthy relationship with Mother. *See* Tenn. Code Ann. § 36-6-106(a)(10).

Father further asserts the record supports the contention that the trial court lacks a sufficient degree of impartiality necessary for a fair and reasoned consideration of the evidence. He contends that had the court felt in previous proceedings he was a genuine threat to abuse the Child, it was incumbent on the trial court to put protections in place. Thus, according to Father, the absence of any such actions on the part of the trial court in the past and the repeated approval of substantial and unrestricted contact between Father and the Child reveal the court's bias against him.

On remand, the trial court made extensive findings of fact while concluding that none of the statutory factors favored Father over Mother. Our review reveals that the trial court fully, extensively, and correctly complied with our directions on remand. The overwhelming evidence supports the trial court's conclusions that Father did not establish a material change in circumstances to warrant a change of the primary residential parent and that the best interest of the Child did not favor Father over Mother. We likewise find that a preponderance of the evidence supports the trial court's award of attorney's fees and costs as well as its determination under the Uniform Child Custody Jurisdiction and Enforcement Act, Tenn. Code Ann. § 36-6-201 et seq. (2010).

# V. CONCLUSION

The judgment of the trial court is affirmed and this cause is remanded for the collection of costs below. Costs on appeal are taxed to the appellant, Jeremy Phillip Lawson.

_____
JOHN W. McCLARTY, JUDGE